AMERICAN GAS & ELECTRIC COMPANY AND SUBSIDIARY COMPANIES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 67368, 67369, 69800. Promulgated November 15, 1935.

*J. Marvin Haynes, Esq.*, for the petitioner.
*Chester A. Gwinn, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined deficiencies in income tax of the petitioner as follows:

| Docket No. | Year | Amount |
| --- | --- | --- |
| 67368 | 1928 | $2,154,726.14 |
| 67369 | 1929 | 1,077,216.70 |
| 69800 | 1930 | 1,459,842.74 |

The parties have filed an "Agreed Statement of Facts", wherein they have settled a number of the issues originally raised and have stated the facts relating to the two questions upon which they ask a decision by the Board.

The one question has been decided against the Commissioner in a number of cases. He concedes that the facts here bring this case within those prior decisions. The question is whether a corporation which retires an outstanding issue of bonds at a callable amount above par in accordance with the trust agreement, is to be denied a deduction for the unexhausted discount and expense on the old bond issue and for the difference between par and the callable price because it borrowed new money to retire those bonds and promptly repaid the amount just borrowed from the proceeds of the sale of a new bond issue. The deduction is proper. *East Ninth Euclid Co.*, 26 B. T. A. 32; 27 B. T. A. 1289; *National Tile Co.*, 30 B. T. A. 32; *San Joaquin Light & Power Corporation* v. *McLaughlin*, 65 Fed. (2d) 677; *Commissioner* v. *Columbia Steel Corporation*, 67 Fed. (2d) 989; *Helvering* v. *California-Oregon Power Co.*, 75 Fed. (2d) 644; *Helvering* v. *Union Public Service Co.*, 75 Fed. (2d) 723; *Helvering* v. *Central States Electric Corporation*, 76 Fed. (2d) 1011. The present case is distinguishable from *Commissioner* v. *Great Western Power Co. of California*, 79 Fed. (2d) 94, because here the old bonds were not retired by an exchange for the new bonds.

The other question is whether a corporation which acquires all of the assets and assumes the liabilities of another, including the liability on outstanding bonds, in exchange for its capital stock may amortize over the remaining life of the bonds the unamortized discount and expense incidental to the original issuance of the bonds under the circumstances here present.

The petitioner is the parent of an affiliated group of corporations, which included in 1928, 1929, and 1930 the Appalachian Electric Power Co. The books of the corporations in the group were kept on an accrual basis and the returns were filed on that same basis.

The Virginian Power Co. (hereinafter called Virginian) was organized in 1912 under the laws of Massachusetts. It was engaged, until 1925, in the manufacture and sale of electricity. It was not affiliated with the petitioner, although the latter owned a large part of its stock. It had sold certain bonds at a discount. The discount and expense of issuing the bonds were shown on its books as prepaid interest. Each year a part of this item was charged to expense.

The petitioner organized the Appalachian Securities Corporation (hereinafter called Securities) in 1924 under the laws of New York. Securities issued 82,000 shares of its first preferred stock to Virginian in January 1925 in exchange for all of the assets of the latter and it

also assumed all of the liabilities of Virginian. The first preferred stock of Securities had voting rights. The stock issued to Virginian was the only stock outstanding after that transfer. Virginian continued its corporate existence and later exchanged its stock in Securities for stock in the petitioner.

The Appalachian Power & Light Co. (hereinafter called Power & Light) was organized on February 14, 1925, under the laws of Virginia. It then transferred all of its stock to Securities in exchange for the assets and liabilities which Securities had just acquired from Virginian. The American Gas & Electric Co. and Securities were consolidated on February 17, 1925, to form the petitioner.

The Appalachian Electric Power Co. was organized on March 4, 1926, under the laws of Virginia and on April 1, 1926, Power & Light and the Appalachian Power Co. (a Virginia corporation organized in 1911) were merged with it. The petitioner owned 95 percent or more of the stock of each at the date of the merger.

The balances of discount and expense on the Virginian bonds after each transfer were placed upon the books of the transferee as prepaid interest. The interest on the bonds was paid by the Appalachian Electric Power Co. after it assumed the liability on the Virginian bonds. It also amortized the balance of discount and expense in the same way as Virginian had done and claimed deductions therefor. The Commissioner disallowed the deductions.

Virginian was entitled to an annual deduction representing amortization of the original expense of issuing its bonds and of the discount at which its bonds were issued. *Helvering* v. *Union Pacific Railroad Co.*, 293 U. S. 282. But the question here is whether the right to such annual deductions persisted without interruption in the various other corporate taxpayers which, in turn, assumed payment of the Virginian bonds. The last taxpayer in the chain was the Appalachian Electric Power Co. and it has no right to the deductions unless each of its predecessors in liability on the bonds had a similar right. The Board has held that deductions for unamortized bond discount and expenses are personal to the corporation issuing the bonds and do not persist in a successor which assumes liability on the bonds. *Western Maryland Railway Co.*, 12 B. T. A. 889, 903, *et seq; Missouri Pacific Railroad Co.*, 22 B. T. A. 267, 287; *Southern Railway Co.*, 27 B. T. A. 673, 688; *Michigan Central Railroad Co.*, 28 B. T. A. 437, 450. The Board has applied this rule in all cases, regardless of whether the liability had been assumed in connection with a sale or whether it had been assumed as a result of a consolidation, merger, or other reorganization from which no gain or loss would be recognized. The application of such a rule here would deny the deductions claimed.

The Board's decisions in three cases on this subject have been appealed. The Circuit Court of Appeals for the Fourth Circuit reversed the Board in the *Western Maryland Railway Co.* case, *supra*. *Western Maryland Railway Co.* v. *Commissioner*, 33 Fed. (2d) 695. *The* Western Maryland Railway Co. issued the bonds in that case. The court there stated that *The* Western Maryland Railway Co. owned all of the stock of seven subsidiary corporations whose property it operated in all respects as its own. That company and its subsidiaries were consolidated to form the taxpayer in that case, Western Maryland Railway Co. The court recognized that the consolidated corporation was a distinct legal entity from those whose places it had taken, but held that the new corporation was entitled to the same deductions on account of unamortized discount that the old corporation would have been entitled to if the reorganization had not taken place, because, for all practical intents and purposes, the new corporation was a mere continuation of the old. Judge Northcott dissented on the ground that since the two corporations were separate legal entities, the new corporation acquired no right to charge off a proportionate part of the discount at which the bonds were originally sold. The present case is distinguishable from the Western Maryland Railway Co. case since here the corporation issuing the bonds was not one of the subsidiaries of a single operating system and never merged or consolidated with the corporation claiming the deduction. Cf. *Brandon Corporation* v. *Commissioner*, 71 Fed. (2d) 761.[1] Virginian did not merge with Securities, but continued as a separate corporation and taxpayer.

The Court of Appeals for the Second Circuit has recently reversed a decision of the Board on the discount question. *New York Central Railroad Co.* v. *Commissioner*, 79 Fed. (2d) 247. There the bond-issuing corporation was later consolidated with others to form the taxpayer corporation. That case is likewise distinguishable from the present case on its facts, since here the bond-issuing corporation never consolidated with any other to form the corporation claiming the deduction. The court said in the *New York Central* case:

In *Western Maryland Railway Co.* v. *Commissioner*, 33 Fed. (2d) 695 (C. C. A. 4) it was held that a consolidated corporation steps into the place of the constituent corporations and is entitled to deduct amortized discount on bonds issued by them. We think this decision is sound and should be followed in the case at bar. * * * The assets of the consolidated corpora-

---

[1] The court in its opinion in *Brandon Corporation* made the following statement in regard to its earlier case:

"Had there been here a merger in which an existing corporation continued its existence, the other corporation or corporations, being subsidiaries of the main corporation and being merged into it, such as was the case in *Western Maryland Railway Co.* v. *Commissioner, supra*, a different question might be presented."

tion have the same cost basis as they had when held by the old companies and are subject to the lien of the bond issues. * * * As already stated the subject of amortization is the difference between the cash realized on the bonds and their par value. This difference the consolidated corporation will pay when the bonds mature, and this expenditure it should be allowed to anticipate by yearly amortization during the life of the bonds in order more clearly to reflect its income.

Cases denying deductions for losses sustained by a predecessor in prior years were distinguished in the opinion in the *New York Central* case. The court said that the difference between the cash realized on the bonds and their par value is not sustained as a loss by the issuing corporation at the time of the issuance of the bonds. The difference between the issuing price and the amount later paid to retire the bonds, the court said, was a loss sustained at the time of the retirement by the corporation retiring the bonds. It held that a corporation succeeding to another by a consolidation and assuming payment of the other's bonds, was entitled to deductions for amortization to absorb the loss, which it would have to pay when it retired the bonds, to the extent that this loss had not been recovered previously. It pointed out that the consolidation was a reorganization and that the successor had to take the same bases on its property which the predecessor had had. The reasoning of the court might apply with equal force to all reorganizations where the old bases carried over. However, the facts in that case showed that there had been a true consolidation. The court did not mention the decision of the Court of Appeals for the District of Columbia in the case of *Turner-Farber-Love Co.* v. *Commissioner*, 68 Fed. (2d) 416, affirming an unpublished decision of the Board.

The facts in the present case are in all essentials like the facts in *Turner-Farber-Love Co.* The taxpayer, in the latter case, exchanged its stock for the assets and liabilities of three companies. One of the three companies had issued its bonds at a discount and the Turner-Farber-Love Co. assumed the payment of those bonds as a part of the liabilities of that company. The appellate court, like the Board, held that the corporation which assumed payment of the bonds was not entitled to deductions representing unamortized discount. Cf. *New York C. & St. L. R. R. Co.* v. *Burnet*, 64 Fed. (2d) 152. The court said:

There was obviously no merger or consolidation of the two companies, but an outright sale of the assets of the one to the other. The vendor, until dissolved, continued to be a corporation. The sale of its assets did not destroy its identity, and it might have continued legally thereafter to do any business its corporate charter authorized. It might have filed a tax return and claimed a loss on the sale of its bonds or on the sale of its other assets. Granted it had the right to amortize its bond discount, petitioner, in purchasing its assets, did not succeed to this right any more than it would have succeeded to the

right to set up its losses occurring prior to the purchase. *Athol Mfg. Co.* v. *Commissioner*, (C. C. A.) 54 Fed. (2d) 230.

What we have just said is true because the tax laws treat separate corporations as separate taxpayers. Here petitioner is a distinct and separate corporation from the Darnell Company.

The court could find no justification in the statute for allowing the Turner-Farber-Love Co. deductions to which the Darnell Co. would have been entitled.

The *Turner-Farber-Love Co.* case was cited by the Supreme Court with apparent approval in *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, whereas the case of the Fourth Circuit, *Industrial Cotton Mills* v. *Commissioner*, 61 Fed. (2d) 291 (which, the Circuit Court said, was governed by its decision in the *Western Maryland Railway* case) was disapproved by the Supreme Court.

The petitioner argues that the prior Board decisions are not in point because they arose under acts which contained no " reorganization " and " non-recognition " provisions. However, the cases can not be distinguished on that basis, since the acts which were applicable to the exchanges in those cases did contain some such provisions. It is no doubt true, however, that Virginian could not have claimed a loss for 1925 on the unamortized discount on its bonds or on the exchange of its other assets. The gain or loss from the exchange which took place in 1925 would not have been recognized under section 203 (b) of the Revenue Act of 1926. The assets transferred would have the same bases in the hands of Securities as they had had in the hands of Virginian.

The Board has never been reversed in disallowing deductions to a successor corporation on account of expenses of the predecessor in issuing its bonds. The theory of the Second Circuit Court decision would not apply to such expenses since the successor does not pay them. The Appalachian Electric Power Co. is not entitled to deduct amortized expenses and discount on the bonds issued by Virginian. Expenses and discount on other bonds are also involved in this case. The facts relating to those bonds, although somewhat different from those outlined above, are nevertheless similar in all essential details, and the decision of the Board is the same in regard to all such deductions claimed in this case.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

BLACK, dissenting: I dissent on the second point. This point is stated in the majority opinion as follows:

The other question is whether a corporation which acquires all of the assets and assumes the liabilities of another, including the liability on outstanding

bonds, in exchange for its capital stock may amortize over the remaining life of the bonds the unamortized discount and expense incidental to the original issuance of the bonds under the circumstances here present.

The majority opinion gives a negative answer to that question and disallows the amortization deduction claimed.

I agree that where one corporation purchases outright the assets of another and as a part of the purchase price assumes and agrees to pay prior issued bonds of the selling corporation, the purchasing corporation is not entitled to set up on its books the remaining unamortized discount and expenses incurred in the original issuance of the bonds and take an annual deduction of unamortized discount spread ratably over the remaining life of the bonds. The reason for this is because a transaction whereby assets are sold by one corporation to another is one in which gain or loss is recognized and the selling corporation is then and there entitled to take a deduction of its remaining unamortized discount and expenses connected with the previous issuance of its bonds.

That seems to be the main ground upon which the court based its decision in *Turner-Farber-Love Co.* v. *Commissioner*, 68 Fed. (2d) 416, and *New York C. & St. L. R. R. Co.* v. *Burnet*, 64 Fed. (2d) 152, both cases cited by the majority opinion in support of the conclusion therein reached. The court emphasized this point in the *Turner-Farber-Love* case, wherein it said:

There was obviously no merger or consolidation of the two companies, but an outright sale of the assets of the one to the other. The vendor, until dissolved, continued to be a corporation. The sale of its assets did not destroy its identity, and it might have continued legally thereafter to do any business its corporate charter authorized. It might have filed a tax return and claimed a loss on the sale of its bonds or on the sale of its other assets. Granted it had the right to amortize its bond discount, petitioner, in purchasing its assets, did not succeed to this right any more than it would have succeeded to the right to set up its losses occurring prior to the purchase. *Athol Mfg. Co.* v. *Commissioner*, (C. C. A.) 54 Fed. (2d) 230.

So, where there has been a sale of the assets of one corporation to another and the purchasing corporation assumes the bonded indebtedness of the debtor corporation as a part of the consideration for the assets purchased, I agree that the purchasing corporation has no right to avail itself as a deduction from its own gross income, of the unamortized discount of the selling corporation. If the facts in the instant case showed an outright sale of assets of one corporation to the other, I would agree to the result reached in the majority opinion. But I think the situation is altogether different where there is a nontaxable exchange under the reorganization provisions of the applicable revenue acts. In that sort of a situation no gain or loss is recognized in the transaction and the corporation to which

the assets are transferred takes the same basis of cost for depreciation and gain or loss on the subsequent disposal of the assets as the transferor corporation had.

In a very real sense the transferee corporation steps into the shoes of the transferor corporation. Speaking on this point, the court in *New York Central Railroad Co.* v. *Commissioner* (a case involving facts somewhat akin to those we have here), 79 Fed. (2d) 247, said:

In *Western Maryland Ry. Co.* v. *Commissioner*, 33 F. (2d) 695, (C. C. A. 4) supra, it was held that a consolidated corporation steps into the place of the constituent corporations and is entitled to deduct amortized discount on bonds issued by them. We think this decision is sound and should be followed in the case at bar. The consolidated corporation does not succeed to the rights and liabilities of the constituent companies as a purchaser but as a successor by operation of law. See *Cortland Specialty Co.* v. *Commissioner*, 60 F. (2d) 937, 939 [11 Am. Fed. Tax Rep. 857] (C. C. A. 2) ; *Commissioner* v. *Oswego Falls Corp.*, 71 F. (2d) 673, 676 [14 Am. Fed. Tax Rep. 311] (C. C. A. 2). The assets of the consolidated corporation have the same cost basis as they had when held by the old companies and are subject to the lien of the bond issues. Hence the consolidated corporation will suffer a loss when it pays the bonds at par, and the regulations as to spreading this loss over the life of the bonds should apply. They do not in terms confine discount deductions to the issuing corporation, and should not be construed to do so. If the new corporation cannot take the deduction, no one can, for the old companies sustained no loss when the consolidation was effected. As already stated the subject of amortization is the difference between the cash realized on the bonds and their par value. This difference the consolidated corporation will pay when the bonds mature, and this expenditure it should be allowed to anticipate by early amortization during the life of the bonds in order more clearly to reflect its income.

Therefore, under the facts stated in the majority opinion and the law applicable thereto, I think petitioner is entitled to prevail on the second issue as well as the first.

SMITH, TRAMMELL, ARUNDELL, and VAN FOSSAN agree with this dissent.