## Coast Counties Gas & Electric Company, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 69843.   Promulgated February 26, 1936.

*Granville S. Borden, Esq.*, for the petitioner.
*George D. Brabson, Esq.*, for the respondent.

**OPINION.**

Morris: In connection with the claimed deduction of $68,052.50 for bond premium, the case before us is this: In connection with the purchase of the assets of its four subsidiaries, several years prior to the taxable year, petitioner agreed to pay sellers' outstanding bonds. In 1930, petitioner caused to be called all of the said bonds then outstanding and paid in redemption thereof $68,052.50 more than their face.

The case, as thus presented, is the direct converse of *Helvering* v. *American Chicle Co.*, 291 U. S. 426. The facts in that case were

summarized by the Court, as follows: "In connection with the purchase of the assets of another company, in 1914, respondent assumed—agreed to pay—more than $2,000,000 of the seller's outstanding bonds. During 1922, 1924 and 1925 it purchased a considerable number of these bonds in the market at less than their face. The Commissioner assessed the difference between these two amounts as income." Upon those facts, the Court held, as follows:

We know nothing concerning the nature of the assets acquired from the Sen Sen Company, have no means of ascertaining what has become of them, or whether any of them still exist. Nothing indicates whether respondent lost or gained by the transaction.

\* \* \* \* \* \* \*

We find nothing to distinguish this cause in principle from *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, 52 S. Ct. 4, 76 L. Ed. 131. The doctrine there announced is controlling here. *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886, is not applicable. The final outcome of the dealings was revealed—the taxpayer suffered a loss. Here, for aught we know, there was substantial profit—certainly, the record does not show the contrary. Doubtless, respondent's books indicated a decrease of liabilities with corresponding increase of net assets.

Earlier, this Board had held in *American Chicle Co.*, 23 B. T. A. 221, that the transactions in which the American Chicle Co. purchased the seller's bonds were capital transactions—payments on the purchase price of assets—that in nowise impinged upon net income; and that view was upheld by the Circuit Court of Appeals, Second Circuit, in *Commissioner* v. *American Chicle Co.*, 65 Fed. (2d) 454, but, as indicated above, was reversed by the Supreme Court.

It is clear from the above opinion that a gain does not necessarily result upon the discharge of an obligation for less than its face. That is clearly to be drawn from the Court's statement that "Nothing indicates whether respondent lost or gained by the transaction", when read in the light of the Court's further statement that respondent "purchased a considerable number of these bonds in the market at less than face." So, too, we read the earlier opinions of the same Court in *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170; and *United States* v. *Kirby Lumber Co.*, 284 U. S. 1.

In *Bowers* v. *Kerbaugh-Empire Co.*, *supra*, the taxpayer borrowed several amounts on its own promissory notes, repayable in German marks or their equivalent in gold coin of the United States. The several amounts borrowed were contemporaneously advanced to a subsidiary and were expended and lost in the performance of construction contracts. The losses, exceeding the subsidiary's income by more than $684,456.18, were allowed as deductions in the subsidiary's returns for 1913, 1914, 1916, 1917, and 1918. In 1921, on the demand of the Alien Property Custodian, the taxpayer made full settlement of principal and interest owing on its notes.

Measured by United States gold coin the difference between the value of the marks borrowed at the time the loans were made and the amount paid to the Custodian was $684,456.18, and the Commissioner held that amount to be income. The Court held that looking at the entire transaction there was no gain, but a loss, stating as follows:

> The transaction here in question did not result in gain from capital and labor, or from either of them, or in profit gained through the sale or conversion of capital. The essential facts set forth in the complaint are the loans in 1911, 1912 and 1913, the loss in 1913 to 1918 of the moneys borrowed, the excess of such losses over income by more than the item here in controversy, and payment in the equivalent of marks greatly depreciated in value. The result of the whole transaction was a loss.
>
> \* \* \* \* \* \* \*
>
> The contention that the item in question is cash gain disregards the fact that the borrowed money was lost, and that the excess of such loss over income was more than the amount borrowed. When the loans were made and notes given, the assets and liabilities of defendant in error were increased alike. The loss of the money borrowed wiped out the increase of assets, but the liability remained. The assets were further diminished by payment of the debt. The loss was less than it would have been if marks had not declined in value; but the mere diminution of loss is not gain, profit or income.

If the intervening events be disregarded and the transaction treated as isolated therefrom, there was a clear gain to the taxpayer, due to the fact that at the time of payment the marks had fallen in value. But the Court concluded that the result could only be determined from an examination of the whole transaction—the loans, the loss of proceeds of the loans, and payment in the equivalent of depreciated marks—and, upon such an examination, it was determined that the result was a clear loss.

In *United States* v. *Kirby Lumber Co.*, *supra*, the taxpayer issued its own bonds for cash, at par, and in the same year purchased some of the bonds at $137,521.30 less than par. The Court held that amount to be income, stating as follows:

> In *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886, the defendant in error owned the stock of another company that had borrowed money repayable in marks or their equivalent for an enterprise that failed. At the time of payment the marks had fallen in value, which so far as it went was a gain for the defendant in error, and it was contended by the plaintiff in error that the gain was taxable income. But the transaction as a whole was a loss, and the contention was denied. Here there was no shrinkage of assets and the taxpayer made a clear gain. As a result of its dealings it made available $137,521.30 assets previously offset by the obligation of bonds now extinct.

As we read these three opinions of the Supreme Court, the tax consequences of transactions like those under consideration are to be determined with reference to the nature of the assets acquired,

their value when acquired, their disposition, and amounts paid for the purchase or in redemption of the bonds; and if these factors, as a whole, reveal that the taxpayer actually has been enriched or suffered a loss by the transactions, the results must be recognized for tax purposes.

In the instant case, we know little or nothing about the circumstances under which petitioner acquired the assets of its four subsidiaries many years before the taxable year, nothing concerning the nature and value of those assets, and have no knowledge as to what has become of them, or whether any of them still exist. All we know is that the petitioner, in connection with the purchase of the subsidiaries' assets, agreed to pay their bonds and actually paid $68,052.50 more than their par value in the redemption thereof. But if the fact of payment of the bonds at less than par was insufficient for the Court to conclude that there was a gain, in *Helvering* v. *American Chicle Co.*, *supra*, so here, the fact of petitioner's payment of the subsidiaries' bonds at more than par is insufficient to support a deduction for the amount paid above par. We know, as a matter of general knowledge, that corporate bonds are frequently sold by the issuing companies at prices above par; and it is neither a harsh nor arbitrary suggestion here that the consideration received by petitioner for agreeing to pay the subsidiaries' bonds may have been worth more than the face of the bonds and as much as petitioner paid in redemption of the bonds. Certainly, the record does not show the contrary. In that event, the petitioner's loss would be less than the amount claimed and might be nil.

The petitioner argues, however, that the bonds were paid by the subsidiaries out of funds furnished by the petitioner, and, therefore, that deductions for the amounts paid above the face of the bonds are available to the subsidiaries in computing the consolidated net income. Of course, after all, what the petitioner here is seeking is the deduction of the amounts in the computation of consolidated net income; and it makes little or no difference whether the deductions be attributed to the petitioner or its subsidiaries. In either event, the effect upon consolidated net income would be the same. But in order that the deductions may be made in the consolidated return, they must be available, as a matter of statutory right, to one or the other. We do not agree that the subsidiaries may deduct the amounts paid in excess of the face of the bonds. The petitioner agreed to pay and actually paid the bonds; and the loss, if any, resulting therefrom was sustained by petitioner and not the subsidiaries. Cf. *Helvering* v. *American Chicle Co.*, *supra*. The subsidiaries were merely conduits through which petitioner's payments passed to the bondholders. But even if the petitioner's contention in this respect could be conceded as correct in principle, the loss is

not determinable, for the record does not show the considerations received by the subsidiaries for the bonds when issued.

It might be further argued that the subsidiaries actually sustained the losses resulting from the payment of the bonds at more than their face, since they conveyed their assets in consideration for petitioner's promise to pay the bonds. But, in that event, their losses would be measured by the excess of the cost of the assets to them over the considerations they received for the bonds, and such excess is not shown by the record.

As to the claimed deduction of $18,419.60 for unamortized discount and expenses incurred by the Contra Costa Gas Co. in connection with the issuance of its bonds in 1914, the issue must be resolved against the petitioner. The reason for recognizing discount was stated in *Pierce Oil Corporation*, 32 B. T. A. 403, as follows:

The reason for recognizing discount is the anticipation of payment at maturity of the full amount of the obligation, which amount is greater than the amount originally received. *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289. During the period of the obligation the supposition is indulged that it will be paid in full, and this supposition is what supports the amortization of the discount. *Helvering* v. *Union Pacific R. R. Co.*, 293 U. S. 282.

The same reasoning applies to the recognition of expenses incurred in connection with the issuance of bonds. From 1914 to 1923, Contra Costa Gas Co. was entitled to amortize the discount and expenses incurred in connection with the issuance of its bonds, and to deduct a pro rata part thereof in each of its tax returns, upon the hypothesis that it would pay the bonds at maturity. When in 1923, however, the petitioner, as part consideration for the assets of Contra Costa Gas Co., agreed to pay the latter's bonds, the hypothesis which theretofore supported the deductions available to Contra Costa Gas Co. failed and its right to the amortization and deductions ceased. Nor is this petitioner entitled to any deductions with respect to the unamortized discount and expenses. *Turner-Farber-Love Co.* v. *Helvering*, 68 Fed. (2d) 416; *American Gas & Electric Co.*, 33 B. T. A. 471. There was no merger or consolidation of the two companies, but an outright sale of the assets of the one to the other. The Contra Costa Gas Co. continued its existence after the sale of its assets, and that was its status in the taxable year under consideration. Upon those facts, this case is distinguishable from *Western Maryland Railway Co.* v. *Commissioner*, 33 Fed. (2d) 695.

As to the claimed deduction of $3,018.46 for expenses incurred by petitioner in the redemption and retirement of the subsidiaries' bonds, which it agreed to pay, the petitioner is right. These were ordinary and necessary expenses of carrying on petitioner's business, and their deduction is proper in computing petitioner's net income.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

## 1206

BLACK, dissenting: I dissent on the first point wherein the opinion holds that the taxpayer may not deduct as a business expense, the amount of bond premiums paid in redemption of bonds issued by petitioner's subsidiaries, which bonds petitioner had assumed and agreed to pay in the purchase of the assets of the subsidiaries. I think that a correct interpretation of article 68, Regulations 74, sustains petitioner's contention with respect to the items of bond premiums and that the deductions claimed with respect thereto should be allowed.

ARUNDELL and LEECH agree with this dissent.

---

SMITH, dissenting: It is obvious that all that a borrower pays to a lender of money in excess of the loan constitutes the cost of the loan to the borrower. Such excess is a legal deduction from the gross income of the borrower whether in the form of interest, as amortization of discount, or as a premium paid on the retirement of the loan. This fact is recognized by the Commissioner's regulations (article 68 of Regulations 74) and by many decisions of this Board and of the courts. *East Ninth Euclid Co.*, 26 B. T. A. 32; 27 B. T. A. 1289; *Indiana Lamp Corporation*, 28 B. T. A. 491; *National Tile Co.*, 30 B. T. A. 32; *Commissioner* v. *Coastwise Transportation Corporation*, 62 Fed. (2d) 332; *San Joaquin Light & Power Corporation* v. *McLaughlin*, 65 Fed. (2d) 677; *Helvering* v. *California Oregon Power Co.*, 75 Fed. (2d) 644; *Commissioner* v. *Great Western Power Co. of California*, 79 Fed. (2d) 94; *Helvering* v. *Union Pacific Railway Co.*, 293 U. S. 282. In *Commissioner* v. *Great Western Power Co. of California, supra*, the Government at the hearing of the appeal conceded that a corporate obligor calling and retiring its bonds for cash was entitled to deduct unamortized discount and the premium paid in connection with the retirement.

The stipulated facts in this case are that the obligors on bonds, the petitioner's subsidiaries which joined with the petitioner in the filing of the consolidated return for 1930, "called and retired" the bonds involved in this proceeding and paid the cash which is claimed as a deduction from gross income on the consolidated return. The amounts are deductible within the plain terms of the Commissioner's regulations. If separate returns had been filed by the several corporate obligors, the amounts of the deductions here in question would unquestionably have been allowed by the respondent- in the audit of the returns. Such corporate obligors have not lost their right by joining with the parent company in filing a consolidated

return. Each corporation in the affiliated group is severally liable for the total tax owed by the group. See art. 15 of Reg. 75.

It should be noted that in the determination of the deficiency herein the respondent did not, contrary to his regulations, rule that the petitioner was not entitled to deduct the amounts here in question. In the consolidated return filed a deduction for amortization of bond discount, expense, and premiums was claimed in the amount of $6,445.46. The amortization was spread over the life of the new bond issue and such part thereof as was allocable to 1930 was claimed as a deduction in the return. In the audit of the return the respondent determined that the correct amount of the amortization allocable to 1930 was $6,241.04. He therefore disallowed the deduction of only $204.42 of the amortization deduction claimed on the return. Only a small part of the deficiency in tax is attributable to such disallowance. Against the deficiency the petitioner claims the deduction of the items here in question. As a defense thereto, the respondent contends that the parent company of the affiliated group "called and retired" the bonds in question and that all that it paid to the bondholders, including the premium paid on the retirement of the bonds, constitutes a part of the cost to the parent company of assets taken over from the subsidiaries at some prior date, in consideration of which the parent company "assumed and agreed to pay the bonds." This contention may not validly be made under the stipulated facts; for they are to the effect that the original obligors of the bonds called and retired them and paid the moneys in controversy here. It is immaterial from what sources the obligors paying the moneys in question acquired them. *National Tile Co.*, *supra*. But even if it might be assumed, contrary to the stipulated facts, that the parent company called and retired the bonds of its subsidiaries, there is no warrant for the assumption that the premium paid on such retirement represents a part of the cost to the parent company of the assets acquired from the subsidiaries. In assuming the bonds of the subsidiaries the parent company assumed no obligation to call the bonds before maturity and pay a premium upon such retirement. Its obligation was merely to pay interest upon the bonds and to pay them off at face value at maturity. If the condition of the money market and its credit was such as to make it advantageous for the parent to call the bonds and pay a premium in order to get rid of paying a high rate of interest on borrowed money for a term of years and it called the bonds and paid the premium, there appears to me to be no warrant for considering the payment of the premium as a capital expenditure representing additional cost of assets acquired. With equal logic it might be argued that every payment of interest on the assumed bonds was a capital expenditure

and represented an additional cost of assets acquired. No such argument can validly be predicated on *Helvering* v. *American Chicle Co.*, 291 U. S. 426.

TRAMMELL [1] agrees with this dissent.

McMAHON, dissenting in part and concurring in part: In *American Chicle Co.*, 23 B. T. A. 221, we originally held that no income was derived on the retirement of either taxpayer's own bonds or assumed bonds of another corporation. However, we thereafter entered an order modifying our opinion to hold, under *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, decided subsequent to our original decision, that petitioner derived income on retirement of its own bonds for less than face, but we adhered to our holding as to the bonds of the predecessor, made upon the authority of *New York, Chicago & St. Louis Railroad Co.*, 23 B. T. A. 177, on the ground that the payments of such bonds at their retirement were payments on the purchase price of assets acquired by taxpayer from the other corporation. In *Commissioner* v. *American Chicle Co.*, 65 Fed. (2d) 454, the Court of Appeals for the Second Circuit affirmed our holding, and in part stated:

The question depends for its answer upon the scope of the decision of the Supreme Court in *United States* v. *Kirby Lumber Company*, 284 U. S. 1. \* \* \*

The Supreme Court in *Helvering* v. *American Chicle Co.*, 291 U. S. 426, reversed the decision of the Second Circuit and stated in part:

Assessments by petitioner which treated as realized income the difference between the face value of certain bonds assumed by respondent in 1914 and the amount at which it purchased them in 1922, 1924 and 1925, were disapproved by the Board of Tax Appeals. The court below affirmed this action, and the matter is hereby certiorari. The meager stipulated facts presented only a narrow point; and to that our decision must be limited.

\*   \*   \*   \*   \*   \*   \*

The case before us is this:

In connection with the purchase of the assets of another company, in 1914, respondent assumed—promised to pay—more than $2,000,000 of the seller's outstanding bonds. During 1922, 1924 and 1925 it purchased a considerable number of these bonds in the market at less than their face. The Commissioner assessed the difference between these two amounts as income.

We find nothing to distinguish this cause in principle from *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, 52 S. Ct. 4, 76 L. Ed. 131. The doctrine there announced is controlling here.

Anything else said by the Supreme Court in deciding that case was primarily for the purpose of showing the distinction between that case and *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170; and, under the doctrine of the *Kirby* case as expressly interpreted and adhered

---

[1] The agreement with this dissent was noted during Mr. Trammell's term of office.

to by the Supreme Court in the *American Chicle* case, the result reached in the latter case followed irrespective of any reference to the *Bowers* case. Hence, under the doctrine of the *American Chicle* case, there is no escape from the principle that, for Federal income tax purposes, one who assumes the payment of obligations of another, figuratively speaking, steps into the shoes of such other, gets into the same position, as to such obligations and thereafter, with respect thereto, is in the same position as such other would have been in if there had been no such assumption, and he is also thereafter in the same position as the one assuming such obligations would be in if he issued similar obligations of his own instead of thus assuming another's obligation; and in the instant proceeding it is immaterial whether petitioner or its subsidiaries called and retired the bonds. When the assuming corporation meets expense of this character it is expense to it just as much as it is expense to the obligor if the obligor meets it. Under either view the unamortized discount and premiums in question here are deductible. In *American Chicle Co.*, 23 B. T. A. 221, we held that the taxpayer had the right to deduct in the year of retirement of bonds issued by it the unamortized discount. This holding was not challenged or disturbed upon review of the case by the United States Circuit Court of Appeals or the Supreme Court. Following *American Chicle Co.*, 23 B. T. A. 221, the Board, in *National Tile Co.*, 30 B. T. A. 32, held that the taxpayer was entitled to deduct unamortized discount, expense of issuance, and premium paid in connection with the retirement of bonds issued by it. Neither of these cases has been overruled or reversed and they are binding upon us as precedents. If there is anything in any of the precedents which calls for a different result here it is in principle contrary to the final decisions in the *American Chicle* case, to sound reasoning, and to good practice; and they should not be followed.

In principle, cases involving mergers and consolidations, wherein the continuing or resulting corporation, by operation of law, is required to assume and subsequently discharge bonds of the merged or consolidated corporation, and wherein it has been held that the former may deduct unamortized discount on bonds issued by the latter, support the foregoing conclusion herein set forth as to unamortized discount, *Western Maryland Railway Co.* v. *Commissioner*, 33 Fed. (2d) 695; *New York Central Railroad Co.* v. *Commissioner*, 79 Fed. (2d) 247; and *Illinois Power & Light Corporation*, 33 B. T. A. 1189; and there is no sound reason in principle for differentiating, in this respect, between unamortized discount and premiums. *Illinois Power & Light Corporation, supra.* The reasons for permitting deductions of such unamortized discount are even stronger

when applied to such premiums. Too, the reasons for allowing both such types of deductions to such continuing or resulting corporations are even stronger when applied to an assuming corporation, such as we have here, since there is on its part a binding contract to discharge based on a consideration, and hence a resulting closer relationship between it and the original obligors, in addition to the operation of law, which is the only basis of close relationship or proximity in the foregoing cases involving continuing or resulting corporations.

*American Gas & Electric Co.*, 33 B. T. A. 471, testing its doctrine by the result there reached, is distinguishable from the instant proceeding. There the situation presented is as if corporation B assumed the liabilities, including outstanding bonds, of corporation A, corporation C in turn assumed such liabilities from corporation B, and corporations C and D then combined to form the taxpayer, corporation E; and it was held that the taxpayer, the last corporation in the chain, was not entitled to amortize over the remaining life of the bonds the unamortized discount and the expenses incidental to the original issuance of the bonds. There it could not be said that the taxpayer stepped into the shoes of the corporation which issued the bonds, or that there was a direct connection or close relationship between it and such corporation, or that there was any proximity between them; the contrary being true in the instant proceeding as between petitioner and its subsidiaries, the only corporation with which we are here concerned.

*New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, is not in point since it involves a net loss deduction under the provisions of statutes which are expressly limited in their application to net losses of "the taxpayer."

I concur in the allowance by the majority of all deductions allowed by them herein and agree with the dissenting opinions of Members Black and Smith; and, by a parity of the reasoning which led to the allowance of such deductions by the majority and of the reasoning which leads to the conclusions reached in those dissenting opinions and to the conclusions reached in this dissenting opinion upon the subjects of premiums and unamortized discount, upon the showing here made, deductions of all other expenses in question here should be allowed as well as unamortized discount, premiums, and those allowed by the majority. See also *Helvering* v. *Taylor*, 293 U. S. 507.

The majority approaches and disposes of the premiums disallowed by them from the standpoint of losses; we are not here concerned with losses; we are concerned only with the deductibility of expenses as to all items.