METROPOLITAN EDISON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57869. Promulgated May 14, 1937.

*Francis J. Sweeney, Esq.*, for the petitioner.
*Chester A. Gwinn, Esq.*, for the respondent.

1114

OPINION.

BLACK: The issues which remain for our decision have been set out in our preliminary statement. We think however that these issues will be better understood if we subdivide them somewhat and this we shall do.

I.

**Bond premiums and unamortized discount and expense, relating to redemption of petitioner's own bonds.**—We shall first take up petitioner's claim for deduction of $1,097,145.29, being the total premiums and unamortized debt discount and expense incurred and accrued at the time of the retirement of $6,080,000 of petitioner's own bonds in 1928. The facts with reference to the retirement of these bonds are stated in paragraph 11 of the stipulation.

The only contention which respondent makes as to why petitioner is not entitled to the deduction claimed is that the bonds were redeemed with the proceeds of petitioner's new bond issue of $23,000,000 first mortgage 4½ percent gold bonds, series D, issued March 1, 1928, due in 1968, and that the amount claimed should be amortized over the life of these new bonds.

It will be noted that none of petitioner's old bonds redeemed in 1928 were exchanged for bonds of the new issue. The bonds retired were redeemed in cash. Under these circumstances petitioner is entitled to the deduction claimed. *American Gas & Electric Co.*, 33 B. T. A. 471; *East Ninth Euclid Co.*, 26 B. T. A. 32; 27 B. T. A. 1289; *National Tile Co.*, 30 B. T. A. 32; *San Joaquin Light & Power Co.* v. *McLaughlin*, 65 Fed. (2d) 677; *Commissioner* v. *Columbia Steel Corporation*, 67 Fed. (2d) 989; *Commissioner* v. *California-Oregon Power Co.*, 75 Fed. (2d) 644; *Commissioner* v. *Union Public Service Co.*, 75 Fed. (2d) 723; *Commissioner* v. *Central States Electric Corporation*, 76 Fed. (2d) 1011.

The respondent in his brief admits that the foregoing authorities are against him on this point, but elects not to concede the issue.

II.

**Unamortized discount and expense of redemption relating to subsidiaries' bonds.**—We shall next take up petitioner's claim for deduction on a consolidated return for 1928 of unamortized discount and expense relating to certain bond issues of the Hamburg Gas & Electric Co., Topton Electric Light & Power Co., and Blue Mountain Electric Co.

These corporations were subsidiaries of petitioner and filed consolidated returns with petitioner for the year 1928. The facts with reference to the retirement of these bonds are stated in paragraphs 14, 15, 16, and 17 of the stipulation. These bonds were redeemed by the corporations which issued them with funds advanced by petitioner. Respondent's only contention as to why petitioner is not entitled to take the deduction claimed on the consolidated return is that the funds with which the bonds were redeemed were obtained by petitioner's new issue of $23,000,000 of bonds discussed under "I" above. Respondent admits that the authorities are against him on this point, but he does not concede the issue. On the strength of the authorities cited under "I" above, we hold for petitioner on this issue.

### III.

**Bond premiums incurred and paid in redemption of bonds assumed by petitioner in acquiring assets of subsidiary corporations.**—We shall next consider petitioner's contention that it is entitled to deduct bond premiums incurred and paid in the redemption of bonds which were not originally issued by petitioner but which it assumed and agreed to pay at the time it acquired all the assets of certain of its subsidiaries. The circumstances attending the assumption of and agreement to pay these several bond issues and the names of the subsidiaries are set forth in the stipulation and need not be repeated here. We deem it unimportant to decide for this point whether petitioner became liable to pay these bonds as a part of the consideration for the purchase of assets in liquidation of a subsidiary or whether the transaction in which the bonds were assumed was a nontaxable reorganization between petitioner and its subsidiary short of a statutory merger and consolidation, or whether the transaction by which petitioner became liable on the bonds was a statutory merger and consolidation of two or more corporations under which petitioner as the succeeding consolidated corporation became liable on the bonds not by reason of a contract of purchase, but by operation of law. We think in any event, regardless of the form of the transaction, petitioner is entitled to the deduction of the premiums which it paid in the redemption of these bonds. When petitioner became liable to pay the bonds, whether by contract of purchase and assumption, or by contract of merger short of a statutory consolidation, or by operation of law following a statutory merger and consolidation of corporations under the laws of the State of Pennsylvania, it became definitely and legally liable for only the face value of the bonds plus the rate of interest provided in the bonds. The bonds, it is true, contained provisions by which the obligor could declare the premature maturity of the bonds

upon condition that certain premiums would be paid upon redemption.

This redemption would usually occur only where prevailing interest rates would justify the calling of the bonds and incurring a premium, so that the debt represented by the bonds could be refunded at a lower interest rate. We do not think that the expenses incurred in redeeming bonds at a premium under such circumstances represent any part of the cost of the assets taken over when liability to pay the face value of the bonds was incurred. Therefore to say, as respondent contends, that a taxpayer under such circumstances is not entitled to a deduction for the amount of bond premiums incurred in the redemption of bonds, unless he affirmatively shows that he has incurred a loss in the purchase of the assets equal to the amount of the bond premiums paid, is not correct reasoning, we think.

Such, it is true, was the basis of our reasoning in *Coast Counties Gas & Electric Co.*, 33 B. T. A. 1199, but we now think that was error. In that case certain subsidiaries of the Coast Counties Gas & Electric Co., under agreements executed and carried out several years prior to the taxable year in question, transferred their properties to the parent corporation, which, as part of the consideration for such transfers, agreed to pay the bonds of the subsidiaries. In 1930 the bonds were called and retired. The taxpayer, the parent corporation, paid a premium on some of the bonds. We held that the taxpayer might not deduct the amount of said premium, as there was no showing that it sustained a loss on the transaction.

We cited in support of our holding in that respect, *Helvering* v. *American Chicle Co.*, 291 U. S. 426, and *United States* v. *Kirby Lumber Co.*, 284 U. S. 1. We distinguished *Bowers* v. *Kerbaugh Empire Co.*, 271 U. S. 170. On reconsideration we think these cases are not in point. In *Helvering* v. *American Chicle Co., supra*, the taxpayer in a purchase of assets had assumed and agreed to pay as a part of the purchase price of the assets taken over, the full face value of the seller's outstanding bonds. Subsequently it purchased some of these bonds at less than their issuing price. The Commissioner determined that the difference between the issuing price of the bonds and the price at which they were purchased represented income to the American Chicle Co. The Supreme Court upheld this contention of the Commissioner, citing *United States* v. *Kirby Lumber Co., supra*. The Supreme Court, as a part of its reasoning, said: Nothing indicates whether respondent lost or gained by the transaction. * * * Here, for aught we know, there was substantial profit—certainly the record does not show the contrary. Doubtless respondent's books indicated a decrease of liabilities with corresponding increase of net assets."

1120

As we have already pointed out, we do not think that bond premiums paid in the redemption of bonds represent a part of the cost of assets taken over. Rather we think they represent part of the expenses of taxpayer's business and are deductible as ordinary and necessary business expenses under the provisions of section 23 (a) of the Revenue Act of 1928, and section 214 (a) of the Revenue Act of 1926, which are applicable to the taxable years involved in this proceeding.

But if we are wrong in characterizing such bond premiums as ordinary and necessary business expenses, such premiums would be deductible under the loss provisions of the applicable statutes. The Court of Claims in the recent case of *American Gas & Electric Co.* v. *United States*, 17 Fed. Supp. 151, held, under facts practically the same as those present here, that the corporation, which had assumed and agreed to pay the bonds when it took over the assets of the selling corporation and subsequently called the bonds for redemption at a premium, was entitled to take as a loss deduction the amount of the premiums paid in the year of redemption. It will be thus noted that in the American Gas & Electric Co. case the Court of Claims placed the allowable deduction under the loss provisions of the statute. So it seems plain that whether the amount of bond premiums paid under such circumstances is characterized as business expense or as a loss, it is an allowable deduction in determining taxpayer's net income.

We now think that our holding in the *Coast Counties Gas & Electric Co.* case, *supra*, to the contrary was erroneous and on that point it will no longer be followed.

## IV.

**Unamortized discount and expense relating to bonds of the Metropolitan Power Co.**—We shall next consider petitioner's claim of the right to deduct unamortized discount and expenses on its consolidated return for 1927 by reason of its redemption in that year of certain bonds previously issued by the Metropolitan Power Co. The amount of the deduction claimed in this respect is $308,-097.90. Facts with reference to these bonds are shown in paragraphs 3, 4, 5, 6, 7, 8, 9, and 10 of the stipulation.

Petitioner does not contend that the transaction by which petitioner took over the assets of the Metropolitan Power Co. and assumed all of its outstanding liabilities, including the bonds in question, was a strict merger under the laws of the State of Pennsylvania. Petitioner in its brief terms the transaction as a *de facto* merger. Regardless of petitioner's characterization, we think the facts which have been stipulated show a liquidation of the Metropolitan Power Co. by its parent, the Metropolitan Edison Co. Such

a liquidation is one in which gain or loss is recognized to the parent corporation. *Pierce Oil Corporation*, 32 B. T. A. 403; *Commissioner* v. *Aluminum Goods Manufacturing Co.*, 287 U. S. 544; *Commissioner* v. *Riggs National Bank*, 57 Fed. (2d) 980. In such a transaction the purchasing corporation is not entitled to deduct the unamortized discount and expenses remaining unrecovered on the bonds previously issued by the subsidiary. *Turner-Farber Love Co.* v. *Commissioner*, 68 Fed. (2d) 416; *American Gas & Electric Co.*, 33 B. T. A. 471; affirmed, except as to bonds of Appalachian Power Co., which the court held to have been assumed in a statutory merger or consolidation; *American Gas & Electric Co.* v. *Commissioner*, 85 Fed. (2d) 527.

Following these authorities we hold that petitioner is not entitled to the deduction of $308,097.90 unamortized discount and expenses which it claims by reason of the redemption in 1927 of bonds of the Metropolitan Power Co.

## V.

**Unamortized discount and expense relating to bonds assumed by petitioner upon transfer of assets by wholly owned subsidiaries in a so-called "short form" of merger.**—We shall next take up petitioner's claim for deduction on a consolidated return for 1928 of $752,481.26 unamortized debt discount and expense of retirement of bonds previously issued by the Cumberland Valley Light & Power Co., York Haven Water & Power Co., Hanover Power Co., and Pennsylvania Edison Co. Facts with reference to these bonds will be found in paragraphs 12 and 13 of the stipulation.

It has been stipulated that during the calendar year 1928 the petitioner, pursuant to the terms of the various indentures referred to, called and retired certain bonds of former subsidiaries which it theretofore had assumed by merger under the laws of the State of Pennsylvania. It has also been stipulated that the four so-called mergers above referred to were under the acts of the General Assembly of the Commonwealth of Pennsylvania of April 29, 1874, and April 17, 1876.

The two acts of April 29, 1874, and April 17, 1876, pursuant to which the contracts were executed, and amendments thereto are embodied in 15 Purdon's Pennsylvania Statutes, Annotated, section 595, and the following provisions are pertinent to this controversy:

Any corporation created under the provisions of this act, * * * may reduce its capital stock * * * by a vote of the stockholders * * *; and it shall be lawful for any corporation in the same manner to sell, assign, dispose of and convey to any corporation created under or accepting the provisions of this act, its franchises, and all its property, real, personal and mixed, and thereafter such corporation shall cease to exist, and the said property and franchises not inconsistent with this act, shall thereafter be vested in the corporation so purchasing as aforesaid * * *.

We think that the so-called mergers under the above quoted acts, which petitioner in its brief calls "short form of merger", amounted in effect to a sale by the subsidiary of its assets to the parent corporation. In fact in each of the exhibits attached to the stipulation, showing details of the merger of Cumberland Valley Light & Power Co., York Haven Water & Power Co., Hanover Power Co., and Pennsylvania Edison Co. with the Metropolitan Edison Co., petitioner, the transaction is referred to as a sale of assets by the subsidiary to the parent corporation. For example, in the application for approval by the Public Service Commission of the Commonwealth of Pennsylvania of the transfer of assets by the York Haven Water & Power Co. to the Metropolitan Edison Co., the proceeding is captioned as follows: "In the Matter of the application of York Haven Water and Power Company and Metropolitan Edison Company under Section 3 (c) Article III and Sections 18 and 19, Article V of the Public Service Company Law, for the approval of the sale of the property and franchises of the former to the latter Company." A careful inspection of each of the exhibits which show the details of the transfer of assets by the four above named corporations to the Metropolitan Edison Co. convinces us that the transactions were essentially liquidations of those companies in consideration of the surrender and cancellation of all their capital stock which was held by petitioner and the assumption of all their liabilities by the petitioner.

In such a situation the same rule applies as we applied in "IV" above, relating to the bonds of Metropolitan Power Co. On the strength of the authorities there cited, we hold against petitioner on the issue of deduction of unamortized discount and expense on the redemption of the bonds of the Cumberland Valley Light & Power Co., York Haven Water & Power Co., Hanover Power Co., and Pennsylvania Edison Co.

## VI.

**Unamortized discount and expense bonds assumed by petitioner in consolidation of three corporations to form petitioner.**—On August 6, 1917, the following corporations were consolidated to form the Metropolitan Edison Co. (petitioner) : Metropolitan Electric Co., Edison Electric Illuminating Co. of Lebanon, Pennsylvania, and Lebanon Valley Electric Light Co. This consolidation took place under the Act of May 3, 1909, P. L. 408, section 1, Laws of the State of Pennsylvania. See paragraph 13 of the stipulation.

Section 5750 of the Pennsylvania Statutes, which amends the act of May 3, 1909, reads as follows:

SEC. 5750. *Effect of merger; new patent bonus; certificate of reports and payment of taxes.*—Upon the filing of said certificates and agreement, or copy

of the agreement, in the office of the Secretary of the Commonwealth, and upon the issuing of new letters patent thereon by the Governor, the said merger shall be deemed to have taken place, and the said corporations to be one corporation under the name adopted in and by said agreement, possessing all the rights, privileges, and franchises theretofore vested in each of them; and all the estate and property, real and personal, and rights of action, of each of said corporations, shall be deemed and taken to be transferred to and vested in the said new corporation, without any further act or deed: Provided, That all rights of creditors and all liens upon the property of each of said corporations shall continue unimpaired, limited in lien to the property affected by such liens at the time of the creation of the same, and the respective constituent corporations may be deemed to be in existence to preserve the same; and all debts not of record, duties and liabilities of each of said constituent corporations shall thenceforth attach to the said new corporation, and may be enforced against it to the same extent and by the same process as if said debts, duties, and liabilities had been contracted by it. But such merger and consolidation shall not be complete, and no such consolidated corporation shall do any business of any kind, until it shall have first obtained from the Governor of the Commonwealth new letters patent, and shall have paid to the State Treasurer a bonus, as prescribed by law, upon all its capital stock in excess of the amount of capital stock of the several corporations so consolidating, upon which the bonus required by law has been theretofore paid: And provided further, That new letters patent of such consolidated corporation shall not be issued by the Governor of the Commonwealth, until each corporation entering into and forming the consolidated corporation shall have filed with the Secretary of the Commonwealth a certificate from the Auditor General of the Commonwealth, setting forth that all reports required by the Auditor General of the Commonwealth have been duly filed to the date of the proposed merger, and that all taxes due the Commonwealth of Pennsylvania have been paid, up to and including said date. (1915, April 20; P. L. 205, sec. 1.)

The agreement of merger is set out in full in Exhibit J of the stipulation and bears the caption, "Agreement of Consolidation and merger by and between Metropolitan Electric Company, The Edison Electric Illuminating Company of Lebanon, Pa., and Lebanon Valley Electric Light Company Forming Metropolitan Edison Company." The agreement to merge and consolidate is a lengthy document and it is believed unnecessary to set it out in full here. Suffice it to say it appears to follow and comply with the Pennsylvania Act of May 3, 1909, as amended, relating to mergers and consolidation of Pennsylvania corporations.

We are of the opinion that the merger and consolidation of the three named corporations to form the petitioner—Metropolitan Edison Co.—was substantially the same as the mergers involved in. *Connecticut Electric Service Co.*, 35 B. T. A. 444. In that case we upheld the contention of the taxpayer that the corporation, which assumed and agreed to pay the bonds of its merged subsidiary as a part of the plan of the merger, was entitled to succeed to the right.

to deduct unamortized discount of the bond issue of the subsidiaries. In ruling upon this point, we said:

Three courts and this Board have now spoken on the right of a corporation resulting from a statutory merger to deduct bond discount on bonds issued by a constituent corporation, and they have all reached the same result in allowing such deduction. The Circuit Court of Appeals for the Fourth Circuit, in *Western Maryland Ry. Co. v. Commissioner*, 33 Fed. (2d) 695; the Circuit Court of Appeals for the Second Circuit, in *New York Central R. R. Co. v. Commissioner*, 79 Fed. (2d) 247, and *American Gas & Electric Co. v. Commissioner*, 85 Fed. (2d) 527; the Court of Claims, in *American Gas & Electric Co. v. Commissioner*, —— Fed. Supp. —— (Dec. 7, 1936) : and this Board in *Illinois Power & Light Corporation v. Commissioner*, 33 B. T. A. 1189, all allowed the deduction where the consolidation or merger was effected pursuant to the provisions of state statutes. *Turner-Farber-Love Co. v. Commissioner*, 68 Fed. (2d) 416, did not involve a statutory merger.

On the strength of *Connecticut Electric Service Co.*, *supra*, and cases there cited, we hold· that petitioner is entitled to deduct $17,383.28 unamortized debt discount and expenses upon retirement in 1928 of bonds of the Metropolitan Electric Co. We do not regard this holding as being in conflict with *Pennsylvania Co. for Insurances on Lives and Granting Annuities* v. *Commissioner*, 75 Fed. (2d) 719. That case involved the right of a consolidated corporation resulting from the merger and consolidation of two other Pennsylvania corporations to bring forward the statutory net loss of one of the merging corporations incurred in the period prior to the merger and use it as a deduction from the income of the corporation resulting from the consolidation. The court denied the right claimed, citing as authority *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435.

We have here no question of the right to carry forward and use as a deduction a statutory net loss. If the same rule that governs the carrying forward of statutory net losses applies to unamortized discount on bonds, then our decision in *Connecticut Electric Service Co.*, *supra*, was wrong and so would be all the cases cited in that report in support of the conclusion there reached. We do not think the rule applicable to the carrying forward of statutory net losses is applicable here.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

STERNHAGEN, dissenting: It seems to me that the decision in subdivision VI, allowing the deduction of $17,383.28 unamortized discount and expense upon the retirement in 1928 of the bonds of the Metropolitan Electric Co., is contrary to *Turner-Farber Love Co.* v. *Commissioner*, 68 Fed. (2d) 416; *American Gas & Electric Co.* v. *Commissioner*, 85 Fed. (2d) 527. The petitioner is, under Pennsyl-

vania law, "an entity entirely distinct from that of its constituents", and as the result of merger or consolidation, the constituent corporations "are deemed dissolved" and "cease to exist." *Pennsylvania Co. for Insurances, etc.*, v. *Commissioner*, 75 Fed. (2d) 719. In this important respect the situation is different from a consolidation in Connecticut, and *Connecticut Electric Service Co.*, 35 B. T. A. 444, is not controlling. There the Board said that "the law of Connecticut is particularly clear in providing that the constituent corporations in the case of a merger or consolidation continue their existence in the corporations into which they are merged or consolidated."

MURDOCK agrees with this dissent.

———

SMITH, dissenting: I am of the opinion that the petitioner is entitled to deduct from the gross income of the taxable years the amounts which have been disallowed in the prevailing opinion of the Board as deductions for unamortized bond discount and expense. The petitioner took over its subsidiaries under mergers of the petitioner with its subsidiaries. It took over the assets of its subsidiaries at the actual costs to the subsidiaries. If the petitioner is not entitled to deduct the unamortized bond discount and expense upon the bonds redeemed in the taxable years it will never get deductions for the unamortized bond discount and expense upon the bond issues of the subsidiaries. In my opinion such a result is not responsive to the legislative intent. See *Western Maryland Ry. Co.* v. *Commissioner*, 33 Fed. (2d) 695; *New York Central R. Co.* v. *Commissioner*, 79 Fed. (2d) 247.

———

MORRIS, dissenting: I dissent from that part of the opinion which is inconsistent with the *Coast Counties Gas & Electric Co.*, 33 B. T. A. 1199, for the reasons given in that opinion in support of the conclusion therein.