## HELVERING, COMMISSIONER OF INTERNAL REVENUE, v. UNION PACIFIC RAILROAD CO.

No. 51.   Argued November 7, 1934.—Decided December 3, 1934.

*Mr. H. Brian Holland,* with whom *Solicitor General Biggs, Assistant Attorney General Wideman,* and *Messrs. J. Louis Monarch* and *Morton K. Rothschild* were on the brief, for petitioner.

*Mr. Henry W. Clark* for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Prior to 1913 respondent, directly or through a subsidiary corporation, sold three issues of bonds, all maturing at dates subsequent to 1923. All were sold at a discount and petitioner paid or allowed to bankers an additional amount as commissions for marketing the bonds. The commissions and discounts, amortized over the periods

from the dates of issue to maturity of the bonds, exceeded $300,000 in each of its taxable years 1918 to 1923 inclusive. Respondent kept its books and made its tax returns on the accrual basis. Deduction from gross income, in its tax returns, of the amortized amount of the commissions and discount was disallowed by the Commissioner, who found a corresponding deficiency under the applicable Revenue Acts of 1918, c. 18, 40 Stat. 1057, and 1921, c. 136, 42 Stat. 227.

The Board of Tax Appeals ruled that the petitioner was entitled to the deduction for the discount but not commissions. 26 B. T. A. 1126. On the appeal of the taxpayer alone the Court of Appeals for the Second Circuit reversed the Board, holding that the commissions should be treated in the same manner as the discount and that the deductions were rightly made. 69 F. (2d) 67. This Court granted certiorari on the petition of the Commissioner, which set up that the decision below conflicted with that of the Court of Appeals in the Seventh Circuit, in *Chicago, R. I. & P. Ry. Co.* v. *Commissioner,* 47 F. (2d) 990, see also *Bonded Mortgage Co.* v. *Commissioner,* 70 F. (2d) 341, and is inconsistent with the decision of this Court in *Old Colony R. Co.* v. *Commissioner,* 284 U. S. 552, which held that premiums received by the taxpayer upon the sale of its bonds before 1913 could not be subjected to income tax in later years by the expedient of prorating them over the period between the date of issue of the bonds and their maturity.

In support of the petition the Government contends that the commissions are not, as the court below held, losses incurred in the taxable year which are deductible under § 234 (a) (4) of the Revenue Acts of 1918 and 1921, although not to be realized until payment of the bonds at maturity. It insists instead that the commissions are expenses incurred and paid at the date of the

bond issue which cannot, on any theory, be deducted in later years. Further, it contends that the amortization of the commissions paid before 1913 and their deduction as amortized in tax returns in later years is inconsistent with the decision of this Court in *Old Colony R. Co.* v. *Commissioner, supra.*

■ There is no provision in either the 1918 or 1921 Revenue Acts specifically authorizing the deduction from gross income of commissions or discount paid or allowed by the taxpayer upon an issue of bonds. Section 234 of the 1918 and 1921 Acts, like the corresponding provisions of the Acts before and since, allow deduction of expenses paid or incurred, interest paid or accrued, and losses sustained during the taxable year. Sections 212 (b) and 213 (a) of the 1918 and 1921 Acts, like § 13 (d) of the 1916 Act, c. 463, 39 Stat. 756, 771, authorize the taxpayer to make his income tax returns on the accrual basis where his books are kept on that basis and reflect true income; they require it if he fails or is unable to make his return on a cash receipts and disbursements basis. The taxpayer is thus enabled to charge against income of the taxable period expenses incurred in and properly attributable to the process of earning income during that period, although payable in a later one. See *United States* v. *Anderson,* 269 U. S. 422, 440; *Aluminum Castings Co.* v. *Routzhan,* 282 U. S. 92; *Niles Bement Pond Co.* v. *United States,* 281 U. S. 357. It follows that when the return is made on the accrual basis, expenses or obligations incurred by the taxpayer in connection with a bond issue, which are not discharged until the payment of the bonds at maturity, may properly be accrued or amortized over the period of the life of the bonds and allowed as annual deductions from gross income.

By Article 150, Treasury Regulations 33, as revised, relating to the 1916 Revenue Act, both commissions and discount upon bond issues of the taxpayer were classified

as losses sustained on payment of the bonds at maturity, and taxpayers were permitted to amortize them over the life of the bonds and deduct them as amortized from gross income in each year. These regulations were continued under the 1918 and 1921 Acts, but the reference to commissions was omitted.[1] Art. 544 of T. R. 45; Art. 545 of T. R. 62. The Board of Tax Appeals has consistently applied the regulations as to bond discount allowed before 1913 and in each case, as in the present, the Government, by failing to seek review of the ruling, has acquiesced in it.[2]

---

[1] Notwithstanding this change in the regulations, the Commissioner appears to have continued to permit taxpayers to amortize and deduct commissions. paid on bond issues prior to 1913, as the regulations under the 1916 Act had expressly permitted. A change of practice was sanctioned in Chicago, Rock Island & Pacific Ry. Co. v. Commissioner, 13 B. T. A. 988, 1034, affirmed by the Court of Appeals of the Seventh Circuit, 47 F. (2d) 990, 991, where the taxpayer, while allowed to deduct bond discount, was not allowed to deduct from gross income the amortized expenses of a bond issue incurred before 1913. This refusal to allow amortization of commissions was confined to the case of bonds issued before 1913.

Treasury regulations have also been silent as to commissions on bonds issued after that date. Art. 544 of T. R. 45; Art. 545 of T. R. 62, 65, 69; Art 68 of T. R. 75, 77. But there are a number of Treasury rulings which permit the amortization of commissions on bonds issued after 1913. O. D. 936, 4 Cum. Bul. 276; O. D. 959, 4 Cum. Bul. 129; I. T. 1412, I–2 Cum. Bul. 91; I. T. 1962, III–1 Cum. Bul. 291; S. M. 3691, IV–1 Cum. Bul. 145.

[2] Chicago, Rock Island & Pacific Co. v. Commissioner, 13 'B. T. A. 988, 1027–1034; Kansas City Southern Ry. Co. v. Commissioner, 16 B. T. A. 665, 686; Terminal Railroad Assn. of St. Louis v. Commissioner, 17 B. T. A. 1135, 1169; Chicago & Northwestern Ry. Co. v. Commissioner, 22 B. T. A. 1407, 1435. In one case the Board refused to allow the amortization, on the theory that the bonds were issued not by the taxpayer but by a predecessor corporation. Western Maryland Ry. Co. v. Commissioner, 12 B. T. A. 889, 907. On appeal by the taxpayer the Board was reversed. 33 F. (2d) 695, 697 (C. C. A. 4th). The Government did not seek review.

Both commissions and discount, as the Government concedes, are factors in arriving at the actual amount of interest paid for the use of capital procured by a bond issue. The difference between the capital realized by the issue and par value, which is to be paid at maturity, must be added to the aggregate coupon payments in order to arrive at the total interest paid. Both discount and commissions are included in this difference. If the difference be viewed as a loss resulting from the funding operation, it is one which is realized only upon the payment of the bonds at maturity.

But even if the commissions, unlike discount, may, as the Government insists, be regarded as a contemporary expense of procuring capital, it is one properly chargeable to capital account. In practice it is taken out of the proceeds of the bonds by the banker. But in any case it must be deducted from the selling price to arrive at the capital realized by the taxpayer from the sale of the bonds, in return for which he must, at maturity, pay the face value of the bonds. The effect of the transaction in reducing the capital realized, whether through the payment of commissions or the allowance of discount, is the same. In this respect the commissions do not differ from brokerage commissions paid upon the purchase or sale of property. The regulations have consistently treated such commissions, not as items of current expense, but as additions to the cost of the property or deductions from the proceeds of sale, in arriving at net capital profit or loss for purposes of computing the tax.[3]

---

[3] Art. 8 of T. R. 33, revised; Art. 293 of T. R. 45, 62; Art. 292 of T. R. 65, 69; Art. 282 of T. R. 74, 77; Hutton *v.* Commissioner, 12 B. T. A. 265, 266. Commissions paid to a banker for selling the taxpayer's corporate stock have not been allowed to be deducted as a current business expense, but have been treated as a capital expenditure. *Simmons Co.* v. *Commissioner*, 33 F. (2d) 75, 76 (C. C. A. 1st); Appeal of Charles H. Lilly Co., 2 B. T. A. 1058; Appeal of Emerson Electric Manufacturing Co., 3 B. T. A. 932, 935; Harrisburg

Here the commissions, when paid, were properly chargeable against capital, and reduced by their amount the capital realized by the taxpayer from the bond issue. They come out of the pocket of the taxpayer only on payment of the bonds at maturity. But, unlike the purchase and sale of property, the transaction contemplated from the beginning a fixed date, the due date of the bonds, at which the difference between the net amount of capital realized upon the issue and the par value of the bonds must be paid to bondholders by the taxpayer. We think that the revenue acts, as they have been interpreted by this Court and the treasury regulations upon this and related subjects, require that this difference between receipts and disbursements of the taxpayer should, in some form, enter into the computation of his taxable income. It is a loss to the taxpayer, definite as to its date and amount, and represents a part of the cost of the borrowed capital during each year of the life of the bond issue. Cf. *United States* v. *Anderson, supra.* At least where the taxpayer's books are kept upon the accrual basis, its final disbursement may be anticipated by amortization and the amortized amount deducted annually from his gross income.

---

Hospital, Inc. *v.* Commissioner, 15 B. T. A. 1014, 1017; Frischkorn Real Estate Co. *v.* Commissioner, 21 B. T. A. 965, 969, 970. Compare the requirement that commissions and expenses paid by a lessor in order to secure a tenant be prorated over the term of the lease. Bonwit Teller & Co. *v.* Commissioner, 17 B. T. A. 1019, 1024; Howard *v.* Commissioner, 19 B. T. A. 865, 866; Clawson *v.* Commissioner, 19 B. T. A. 1253; Roby Realty Co. *v.* Commissioner, 19 B. T. A. 696, 698; Butler *v.* Commissioner, 19 B. T. A. 718, 729, 730; Central Bank Block Assn. *v.* Commissioner, 19 B. T. A. 1183, 1185; Webb *v.* Commissioner, 20 B. T. A. 274; Spinks Realty Co. *v.* Commissioner, 21 B. T. A. 674, 677; Young *v.* Commissioner, 20 B. T. A. 692, 695. Compare also the compulsory proration of fees and commissions paid by a borrower in order to obtain a loan. Lovejoy *v.* Commissioner, 18 B. T. A. 1179, 1182, 1183; S. & L. Building Corp. *v.* Commissioner, 19 B. T. A. 788, 794.

■ Our decision in *Old Colony R. Co.* v. *Commissioner, supra,* does not require a different conclusion because the commissions in the present case were allowed before 1913. It was recognized in that case that premiums on a bond issue received after the Sixteenth Amendment might be prorated over the period of the life of the bonds and taxed annually as income during this period. In refusing to allow premiums received before 1913 to be thus prorated and taxed, the Court was moved by the consideration that the premiums, which were received as income and had become a part of the taxpayer's capital before the Sixteenth Amendment, could not be taxed as income by virtue of that amendment and legislation under it.

No such consideration is presented here, where the question is only of the deduction of an expense incurred before the amendment. Hence, the decision in the *Old Colony* case can militate against our conclusion here only if returns, prepared in conformity to it, would fail to reflect true income if the rule announced in the *Old Colony* case were also complied with. Plainly such is not the case. There can be no question of receipt of a premium where the bonds are sold at a discount. When sold at a premium, as in any other case, commissions must be deducted from gross proceeds in arriving at the capital realized upon the bond issue. There is no occasion for deduction of commissions from gross income at a later time unless the total amount realized by the sale of the bonds is less than their par value. In that case the difference alone is the amount to be amortized and deducted from gross income in the annual returns of the taxpayer. This would reflect his true income, where, as in the present case, his accounts are kept on the accrual basis.

*Affirmed.*