**MEMORIAL CORPORATION et al.,**
**Plaintiffs,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. 1686.**

United States District Court
M. D. Tennessee, Nashville Division.

Dec. 6, 1955.

Barksdale, Hudgins & Osborn, Attys., Nashville, Tenn., for plaintiffs.

Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., and Harlan Pomeroy, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

DAVIES, District Judge.

### Findings and Conclusions

The above entitled action was heard before the Court on July 18, 1955, and former days of the term.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiffs and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### Findings of Fact

1. During the year 1926, and prior years, Messrs. J. W. Pritchett, George G. Thomas, and John A. Pritchett were partners in the real estate firm known as Pritchett-Thomas Company. They had an option to buy certain property in Nashville, Davidson County, Tennessee, and they desired to purchase it and erect a building thereon.

2. In order to finance this venture, they formed a common law trust and issued preferred and common syndicate certificates, as provided for under the terms of a syndicate agreement entered into by the trustees and the purchasers of the certificates.

3. For purposes of the federal income tax, the government insisted that the trust, or syndicate, be taxed as a corporation on the accrual basis, and all income tax returns were filed on that basis during the existence of the trust, or syndicate.

4. The sole purpose in issuing the preferred certificates was to finance the purchase of real property and the erection of a building on that property.

5. The nature and purpose of the preferred certificates appear from the facts and circumstances surrounding the organization of the trust and from certain provisions of the syndicate agreement under which said business trust was formed. For instance:

(a) Section 6 of the agreement provides that said preferred certificates shall constitute a first charge against the total net income arising from the conduct and operation of said land, and all improvements thereon, and shall be preferred in the event of any sale or conversion of said property in the manner provided in the agreement.

(b) Section 17 of said agreement provides as to amount that, if preferred certificates to the aggregate face value of $100,000 were not sold by July 1, 1924, then the trustees must return in full to the preferred certificate holders the amounts paid by them.

(c) Section 10 provides that the entire income from rents, after the payment of all fixed charges, must be applied to the payment of all interest accruing on the certificates, the balance of such earnings to be placed in a sinking fund for the purpose of retiring said certificates.

(d) Such provisions are not characteristic of preferred stock which, though ordinarily preferred over common stock, is preferred only in the event of a liquidation of the corporation. No sinking fund is ordinarily established for retirement of preferred stock. Furthermore, preferred stock is not ordinarily required to be retired by a corporation within a certain period of time; but the preferred certificates involved in this case had to be retired on December 1, 1940, if not before.

(e) Said agreement further provides that the preferred certificate holders were to have no interest in the land or building. Stockholders of the corporation would have an interest in the property of the corporation, after payment of debts and claims. They are considered as holding an equity.

(f) Section 13 of the agreement provides that at any time after two years from the date of the agreement, the trustees could convert the trust into a corporation without the consent of the certificate holders; and the only stock such corporation was authorized to issue was common stock. Bonds were to be exchanged for the preferred certificates on an equal face value basis.

6. On the date of organization, as shown by the opening entry on the Syn-

dicate books under date of February 28, 1926, $275,000 was received from the sale of preferred certificates for the purpose of procuring the property and constructing and equipping the building; and this sum, less expenses of selling the preferred certificates, was so employed; and said opening entry showed the amount paid Pritchett-Thomas Company for sale of such certificates to be $42,500.

7. On August 1, 1940, when the trust was converted into a corporation, the outstanding preferred certificates were exchanged for bonds of equal face value, due in 20 years from date but subject to call after three years. This was authorized by Section 13 of the syndicate agreement.

8. Pursuant to such conversion, plaintiff corporation was organized on August 1, 1940, and became vested with the properties of the syndicate, or trust; and, at the time said corporation bonds, due in 20 years, were exchanged for said preferred syndicate certificates, on such equal basis, common stock of the corporation was exchanged for common syndicate certificates on an equal face value basis.

9. When said preferred syndicate certificates were issued, the $42,500 paid to Pritchett-Thomas Company for their services in selling the preferred certificates, in accord with Section 12 of the syndicate agreement, was allocated to the building and amortized at the rate of 2½%, per year, based on a 40 year period, which was actually in excess of the combined terms, or lives, of said preferred certificates and corporate bonds exchanged therefor. The preferred certificates had a maximum life of 14 years and had to be exchanged for said corporate bonds by December 1, 1940, or be redeemed; and the maturity of such bonds was fixed at not more than 20 years after the exchange. Hence, the combined term amounted to 34 years, or less, if the securities were redeemed at an earlier date.

10. Said preferred certificates were in the nature of interim certificates in connection with the final issuance of definitive bonds because they were subject to be exchanged for corporate bonds at any time after two years from the formation of the trust, or syndicate, and up to December 1, 1940, not at the election of the holders but as required by the trustees under the provisions of Sections 13 and 16 of the syndicate agreement.

11. Said sum of $42,500 was amortized at the rate of 2½%, per annum, for Federal income tax purposes in the Federal income tax returns of both the syndicate, or trust, and the plaintiff corporation through the year 1943, without objection from defendant or its representatives in the Treasury Department.

12. However, for the years 1944 and subsequent years, the Internal Revenue Agents who examined plaintiff's federal income tax returns, denied the deduction of 2½% of said $42,500 expense of selling said preferred syndicate certificates and assessed tax deficiencies accordingly which were paid by plaintiff; and no further amortization of such expense was deducted by plaintiff on income tax returns, after such disallowance.

13. Plaintiff corporation was liquidated and its charter surrendered in December, 1951; and, at that time, the balance of said original selling expense of $42,500 amounted to $23,020.84 after deducting the aggregate amortization of 2½%, per annum, up to the year 1944, when it was first disallowed.

14. Said sum of $23,020.84 was deducted by plaintiff corporation from the proceeds of sale of its property in arriving at long term taxable gain in said plaintiff's income tax return for the year 1954, its final return and the year of its liquidation and dissolution.

15. The Internal Revenue Agent who examined the aforesaid final income tax return of plaintiff corporation made no adjustments therein, except that he not only disallowed said deduction of $23,020.84 but added to the gain on liquida-

tion said entire original expense item of $42,500, thereby increasing plaintiff's income taxes for that year by the sum of $10,625, which plaintiffs paid under protest on August 1, 1952; and, for the recovery of which with lawful interest from date of payment, claim for refund was filed, denied, and this suit brought as provided by law.

16. The Internal Revenue Agent who examined the plaintiff's aforesaid return and denied said deduction testified that the reasons he, in effect, added to plaintiff's gain on final liquidation said entire expense item of $42,500 was because he considered it was an excessive commission paid for the sale of the preferred syndicate certificates and because he was in agreement with the Internal Revenue Agent's report denying the plaintiff the right to amortize such expense in the year 1944 and subsequent years on the ground that the preferred syndicate certificates were equivalent to preferred stock and were not bonds.

17. The entire capital of plaintiff, Memorial Corporation, consisted of the proceeds of sale of the preferred syndicate certificates, sold prior to and at the time of organization of the syndicate or common law trust and thereafter converted into corporate bonds on organization of the Memorial Corporation, as aforesaid.

18. Said entire capital of the Memorial Corporation, at the time of its liquidation and at all times since its organization, was invested in and represented by said land, building and fixtures sold in the complete liquidation of said corporation in the year 1951.

19. The capital gain from said sale and liquidation, after deducting, among other items not questioned, said unamortized balance of commissions, then amounting to $23,020.84, was reported in said corporation's final Federal income tax return filed for said year 1951 and computed by using the alternative method of arriving and paying the tax for that year.

20. The corporation had no ordinary net income in said year 1951, having sustained an operating loss.

## Conclusions of Law

1. The Court has jurisdiction of this civil action under Title 28 U.S.Code, 1940 Ed., § 41(20) [1]

2. Although the Court is of the opinion that the preferred syndicate certificates were fixed obligations, or bonds, as a matter of law, it is immaterial in this case, whether they were bonds or stock, since the deficiency involved was assessed for the year of dissolution and liquidation of plaintiff corporation and since the expenses were incurred for selling syndicate certificates prior to and at the time of organization and not subsequent thereto and since it is well settled that the expense of selling capital stock incurred prior to and at the time of organization is deductible along with other organization expenses in arriving at taxable gain from sale of capital assets on final liquidation and dissolution of the corporation.

3. Even if such commissions, unlike discount, may, as the Government insists, be regarded as expense of procuring capital, it is one properly chargeable to capital account, as held in Helvering v. Union Pacific Railroad Company, 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363; and the unamortized balance thereof is properly deductible from that account upon liquidation of the corporation since there is no statute or regulation requiring amortization of such commissions over the period of the mortgage or life of the bonds, as in the case of discount.

4. The plaintiff is entitled to a refund from respondent of $10,625, with interest as provided by law, on account of the Federal income tax deficiency erroneously assessed against plaintiff and paid on August 1, 1952, for which proper and timely refund claim was filed and denied.

Judgment will be entered accordingly.

[1] Now 28 U.S.C.A. §§ 1346, 2401, 2402.