**Walter M. WEIL and Adele D. Weil, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 12456.

United States Court of Appeals, Sixth Circuit.

Feb. 7, 1956.

---

M. E. Newcomer, Cleveland, Ohio (McAfee, Grossman, Taplan, Hanning, Newcomer & Hazlett, Cleveland, Ohio, on the brief), for petitioners.

Carolyn Just, Washington, D. C. (H. Brian Holland, Ellis N. Slack, L. W. Post, Washington, D. C., on the brief), for respondent.

Before SIMONS, Chief Judge, and McALLISTER and MILLER, Circuit Judges.

SIMONS, Chief Judge.

Review of the Tax Court decision in the above entitled cause presents a disputed interpretation of the alternative tax section of the Internal Revenue Code of 1939 in effect for the year 1948 and its impact upon the tax liability of taxpayers having substantial long-term capital gains. The facts are not in dispute and computations based on the conflicting interpretations are concededly correct.

Prior to the Revenue Act of 1921, capital gains were taxed in full in the year realized. Because taxpayers were reluctant to sell or exchange property which would result in large capital gains taxed in a single year at high progressive rates, the 1921 Act, § 206(b), 42 Stat. 233, adopted an alternative tax treatment of capital gains, in order "to permit such transactions to go forward without fear of a prohibitive tax." The Act provided that the alternative tax shall be imposed at the election of the taxpayer and shall be determined by a partial tax, at regular progressive rates, imposed upon ordinary net income plus a percentage of capital net gain. Experience led to changes in this concept in 1924, 1926, 1928, 1932, and 1934, until the formula evolved in the 1938 Act, which was in effect in 1948 and governs the present taxpayers in respect to their capital gains. This is embodied in § 117 (c) (1) of the 1938 Act and was substantially carried over into § 117(b) and

§ 117(c) (2) of the 1939 Code, 26 U.S. C.A. § 117(b), (c) (2). The purpose of § 117 of the 1938 Act was to place an upper limit on the amount of tax levied upon capital gain. The details of earlier provisions and their legislative history is recited in the clear and carefully reasoned opinion of the Tax Court in 23 T.C. 424, November 30, 1954, and will not be here restated.

Section 117(c) (2) provides:

"If for any taxable year the net long-term capital gain of any taxpayer (other than a corporation) exceeds the net short-term capital loss, there shall be levied, collected and paid, in lieu of the tax imposed by sections 11 and 12, a tax determined as follows, if and only if such tax is less than the tax imposed by such sections:

"A partial tax shall first be computed upon the net income reduced by the amount of such excess, at the rates and in the manner as if this subsection had not been enacted, and the total tax shall be the partial tax plus 50 per centum of such excess."

What the Commissioner determined, the Tax Court approved, and we have to consider, is the impact of this section upon the tax liability of the petitioners in 1948. In that year, the petitioners' ordinary income was $50,753.61, their reportable long-term capital gain was $1,470,328.84, and their taxable gain was 50% of that amount, namely, $735,164.-42. During the year, however, the taxpayers claimed deductions of $114,269.63 for charitable contributions and taxes allowable under § 23 of the 1939 Code, 26 U.S.C.A. § 23, then in effect. The Commissioner applied to these figures the provisions of § 117(c) (2). He first computed a partial tax upon the net income, reduced by the taxable capital gain, at the rates and in the manner provided in §§ 11 and 12 of the 1939 Code, 26 U.S.C.A. §§ 11, 12. He found the result, of course, to be zero. He then added 50% of the net long-term capital gain and found the tax to be $367,582.21. The taxpayers contended in the Tax Court that the Commissioner's determination of the alternative tax resulted in a disallowance of otherwise authorized deductions, since their net income was less than net taxable capital gain. They urged instead that the 50% rate should be applied to such gain only to the extent that such gain does not exceed net income upon which the tax liability is determined under the regular as distinguished from the alternative method of computation and that their alternative tax should be 50% of this figure, or $335,224.20. They say that the Commissioner's ruling deprived them of their deductions in the computation of the partial tax and that their unused deduction must be deducted from the taxable capital gain in computing the capital gain portion of the alternative tax. The Tax Court held, however, that the taxable capital gain is not to be reduced by such unused deductions, in computing the alternative tax. It pointed out that if the petitioners' tax were determined pursuant to the ordinary method, full allowance would be given to them of the deductions allowable under the Code, but their tax would then be computed at the progressively increasing surtax rates of the Code, whereas, the alternative tax can only be imposed upon a fixed rate and then only if it is less than the tax would have been under §§ 11 and 12. It also showed that the alternative tax is less under both petitioners' and respondent's computations and, accordingly, must be imposed under either view. The 1938 Act provides that the taxable portion of capital gain must either be added to the taxpayers' other gross income and taxed in the regular manner at progressive rates or taxed separately at a flat rate, according to which method produces the lesser tax.

 Except for the need of stating the problem, and some general considerations, we might well decide this case by summary judgment based upon the excellent opinion of the Tax Court. There

596

is, however, a seeming inequity in a result which appears to deprive the taxpayers of the full measure of their deductions allowable under § 23 of the Code. The alternative computation provision is, of course, a relief measure and should, therefore, be liberally construed. This, the Tax Court conceded. The purpose of the alternative computation was to tax, at a flat maximum rate, only 50% of net taxable gains. This would be automatically achieved if all income taxes were based upon a fixed percentage of net income without the progressive accelerations in percentages. However, the application of such progressive rates would, in the case of taxpayers having large capital gains, result in their paying a much higher tax than one computed upon 50% of such gains. Seeking over the years for a formula to prevent this result, the Congress, after many changes, evolved the procedures dictated by § 117(c). Perhaps, it is not precise but it reasonably achieves the congressional purpose. In cases where ordinary income is greater than net capital gains, no problem arises and, so, the Tax Court viewed the present problem as one of first impression. The test of its unfairness, however, is the end result and not the means by which it is reached for it must be remembered that, if no relief for the taxpayer is accomplished by the alternative computation, all net income must be taxed at the progressive rates. The case of the present taxpayers presents a clear example of the extent of the relief accorded them. Had there been no alternative tax, the petitioners would, under §§ 11 and 12, have faced a tax liability of over $500,-000.00, roughly estimated. Instead of that, their taxes are computed at $367,-582.21. The section involved is clear and unambiguous. It calls for no interpretation and no unfairness therein invites search for a formula other than the one provided.

Affirmed.