UNITED STATES of America

v.

MEMORIAL CORPORATION et al.

No. 12843.

United States Court of Appeals
Sixth Circuit.

May 29, 1957.

Grant W. Wiprud, Washington, D. C., Charles K. Rice, Lee A. Jackson, Robert N. Anderson, and Louise Foster, Washington, D. C., Fred Elledge, Jr., U. S. Atty., Nashville Tenn., on brief, for appellant.

Harris A. Gilbert, Nashville, Tenn., John M. Barksdale, Barksdale, Hudgins & Osborn, Nashville, Tenn., on brief, for appellee.

Before SIMONS, Chief Judge, and ALBERT LEE STEPHENS of Ninth Circuit and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The Memorial Corporation brought suit in the district court to recover income taxes paid under a deficiency assessment. The district court held that where a syndicate, organized to buy land and erect a building thereon, issued preferred syndicate certificates, and after sale thereof reorganized as a corporation and converted the preferred certificates into bonds, in accordance with the syndicate agreement, the amount paid as commission for the sale of the preferred certificates, remaining unamortized, was deductible in arriving at taxable gain from the sale of the capital assets, on final liquidation and dissolution of the corporation. The court, accordingly, entered judgment for the corporation for refund of the income taxes paid; and the government appeals.

The facts of the case are as follows: During 1926, and prior thereto, four men were members of a real estate firm, known as Pritchett-Thomas Company, in Nashville, Tennessee. They had an option to buy a certain property in Nashville and they desired to purchase it and erect a building on it. To do this they needed money, and to get it, they formed a common-law trust, and issued and sold preferred certificates, as provided for in the terms of a syndicate agreement between the trustees of the common-law trust and the purchasers of the certificates. The only purpose of issuing and selling the certificates was to buy the real estate and erect the building.

On the date of organization of the common-law trust, Feb. 28, 1926, $275,000 had been received from the sale of the certificates, as shown by the opening entry on the syndicate books, and this amount was received, as above stated, to buy the land and erect the building. The

above amount, less expenses of selling the certificates, was so employed. The opening entry on the books also showed that $42,500 had been paid to the partnership for the sale of the certificates.

The syndicate agreement provided that the certificates would constitute a first charge against the total net income, arising from the conduct and operation of the property and would be preferred in the event of sale or conversion of the property; that if the certificates of the aggregate face value of $100,000 were not sold by a certain date, then the trustees were to return, in full to the certificate holders, the amount paid by them; that the entire income, after the payment of all fixed charges, was to be applied to the payment of all interest charges accruing on the certificates, and the balance of such earnings were to be placed in a sinking fund for the purpose of retiring the certificates. It was also required that the certificates be retired on December 1, 1940, or before. Certificate holders had no interest in the property.

The agreement further provided that at any time after two years from the date of the agreement, the trustees could convert the trust into a corporation without the consent of the security holders; and the only stock which the corporation was to be authorized to issue was common stock. The said certificates, in case of incorporation, were to be exchanged for bonds of the corporation, on an equal face value basis.

On August 1, 1940 the common-law trust was converted into the Memorial Corporation, the appellee taxpayer in this case. The outstanding certificates were exchanged for bonds of the corporation, of equal face value, due in twenty years, but subject to call after three years. The corporation became vested with the property of the syndicate or trust.

At the time of the organization of the trust, or syndicate, the government had insisted that it be taxed as a corporation on the accrual basis, and all income tax returns were filed on that basis during the existence of the trust.

When the certificates were first issued, the sum of $42,500—paid to the partnership for their services in selling the certificates in accordance with the agreement between the syndicate and the certificate purchasers—was allocated to the building and amortized at the rate of 2½% per year, based on a 40-year period, which was a longer period than the combined terms of the certificates and bonds exchanged therefor. The certificates had a life of 14 years and had to be exchanged for corporate bonds by December 1, 1940, or be redeemed; and the maturity of the bonds was fixed at not more than 20 years after the exchange. The combined term, therefore, amounted to 34 years, unless they were redeemed at an earlier date.

As above mentioned, the sum of $42,500 of expense of selling the certificates was amortized at the rate of 2½% per year for federal income tax purposes, in the returns of both the syndicate and the corporation, through the year 1943—a period of 17 years—without objection from the government or its representatives in the Treasury Department. However, for the year of 1944 and subsequent thereto, the Revenue Agent who examined the corporation's income tax return denied the deduction of 2½% of the $42,500 expense of selling the certificates, and assessed tax deficiencies, which were paid by the corporation; and no further amortization of such expense was deducted by the corporation on income tax returns, after such disallowance.

The corporation was finally liquidated and its charter surrendered in December, 1951, and, at that time, the balance of the original selling expense of $42,500, after deducting the amortization up to 1924, amounted to the sum of $23,020.84. This sum was deducted by the corporation from the proceeds of the sale of its property, in arriving at long term taxable gain, in the corporation's income tax return for 1954—its final corporation's income tax return for 1954—its final return, which was filed the year of its liquidation and dissolution.

The entire capital of the corporation consisted of the proceeds of the sale of the certificates, which were sold prior to, and at the time of, the organization of the syndicate or common-law trust, and thereafter converted into the corporate bonds; and this entire capital, at the time of the corporation's liquidation, and at all times since its organization, was invested in, and represented by, the property which was sold in complete liquidation of the corporation in 1951. The capital gain from the sale and liquidation, after deducting, among other items not questioned, the unamortized balance of the cost of raising the capital—then amounting to $23,020.84—was reported in the corporation's final federal income tax return filed for the said year, and computed by using the alternative method of arriving at, and paying the tax for that year. The corporation had no ordinary net income in 1951, having sustained an operating loss.

■■ The court held in accordance with the taxpayer's contention that the unamortized balance of $23,020.84 was chargeable to capital account and deductible from that account upon liquidation of the corporation, in arriving at long term capital gain. When a corporation sells an issue of bonds at a discount and pays commissions for marketing them, such expense of procuring capital is properly chargeable to capital account. Helvering v. Union Pac. Co., 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363. If an expenditure is paid to acquire an asset, the useful life of which is substantially longer than the taxable year, such expenditure is generally treated as being a capital item, not deductible as a business expense. Any portion of expenses incurred in issuing bonds, unamortized at the time of dissolution of a corporation, is deductible at the time of the dissolution. Mertens Law of Federal Income Taxation, Sec. 25.35 and Sec. 12.112. The expense of selling the certificates in the instant case was the same kind of expense of procuring capital as commissions paid for marketing bonds and is properly chargeable to capital account.

Appellant contends that in any event, appellee corporation, having elected to compute its tax on capital gain under the "alternative method" authorized by Sec. 117(c) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117(c) (1), is prohibited from deducting the expense of procuring the original capital; and in support of its contention appellant cites our decision in Weil v. Commissioner of Internal Revenue, 6 Cir., 229 F.2d 593, 594. That case held that a taxpayer who used the alternative method was not permitted to take any deductions against capital gain, the claimed deductions in that case being for charitable contributions and taxes allowable under Sec. 23 of the 1939 Code, 26 U.S.C.A. § 23 then in effect. We are of the opinion that the foregoing authority is inapplicable to the instant case.

■ The deductions sought in the Weil case were those allowable against ordinary income. It was there held that they could not be deducted from capital gain, before computing the tax under the alternative method. There are no such deductions sought in the instant case. Here we are concerned with capital items to be included in the adjusted basis under Sec. 113(b) of the Internal Revenue Code, 26 U.S.C.A. § 113(b). The district judge held that the expense of procuring capital was properly chargeable to capital account; and it is true that, in so holding, he said that "the unamortized balance thereof is properly deductible from that account upon liquidation of the corporation." [136 F.Supp. 394.] But that did not mean that it was a deduction in the sense of a deduction allowable against ordinary income, as was the situation in the Weil case. In the instant case, the court obviously meant only that it was deductible from the proceeds of the sale of corporate property in arriving at long term capital gain in the corporation's final income tax return filed in the year of its liquidation and dissolution. That is entirely different from holding that deductions allowable against income cannot be deducted from capital gain be-

fore computing income under the alternative method.

Strangely enough, while the government insists that the capital expenditure cannot be deducted from the proceeds of the sale of the corporate property in arriving at the capital gain, it is equally insistent that the expenditure cannot be deducted from ordinary income, since it refused amortization of the capital item here involved and deductions from ordinary income on account thereof in prior years, and assessed and collected tax deficiencies on that basis.

We are of the view that the district court correctly decided the case, and the judgment is, accordingly, affirmed on the findings of fact and conclusions of law of the late Judge Elmer D. Davies, 136 F. Supp. 391.