Meyer A. Mathiasen and Evelyn Mathiasen v. Commissioner.
Mathiasen v. Commissioner
Docket No. 84717.
United States Tax Court
T.C. Memo 1961-325; 1961 Tax Ct. Memo LEXIS 23; 20 T.C.M. (CCH) 1681; T.C.M. (RIA) 61325; December 1, 1961
George F. Shinehouse, Jr., Esq., 1610 Two Penn Center Plaza, Philadelphia, Pa., for the petitioners. Stephen P. Cadden, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1957 in the amount of $4,382.38. The issue for decision is whether petitioners are entitled to a claimed deduction in the amount of $12,500 paid by one of them in 1957 in settlement of a lawsuit against him individually and certain corporations of which he was a stockholder and president, *24 either as an ordinary and necessary business expense or as an ordinary and necessary expense for the production of income or for the management, conservation, or maintenance of property held for the production of income. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife residing in Havertown, Pennsylvania, filed their joint Federal income tax return for the year 1957 with the district director of internal revenue at Philadelphia, Pennsylvania. Meyer A. Mathiasen, hereinafter referred to as petitioner, has been connected with the shipping business since 1909. From 1909 to 1929 petitioner was at sea and during the last 9 years of this period was Master of Ships. From 1922 to 1929 the ships on which petitioner served were tankers. In 1929 petitioner became connected with the Pennsylvania Shipping Company, a corporation with headquarters in Philadelphia, Pennsylvania, the business of which was the operation of vessels all over the world but primarily coastal operations. Petitioner first served as superintendent of this corporation and later as vice president in charge of operations. In 1954 petitioner, together *25 with two other persons, incorporated Mathiasen Tanker Industries, Inc. Petitioner was the major stockholder, a director, and president of that corporation. The corporate business was the management of vessels owned by others. Mathiasen Tanker Industries, Inc., is compensated on a per diem basis for its services in managing such vessels. During the period from 1950 to 1957 petitioner participated in the formation of a number of corporations which were engaged in the ownership of vessels and other maritime ventures. The persons with whom petitioner participated in the formation of the various corporations were persons with financial resources or ability to obtain financing and persons with contacts in the shipping industry. During the period 1950 through 1957 petitioner was an officer, director, and stockholder in the following companies: Western Hemisphere Corporation, Eastern Tankship Corporation, Penfield Corporation (Liberia), Mathiasen-Raudenbush Ocean Transportation Company, Algonquin Corporation, Lennox Corporation, and Puerto Rico Liberian Corporation. He was an officer and director, but not a stockholder, in Scandinavian Tankers, Inc. Mathiasen Tanker Industries, Inc., managed *26 the vessels owned by these corporations and derived about 40 percent of its income from this source. During the period 1950 to 1957 petitioner also participated in the formation of the following corporations which were incorporated for a specific or special purpose but never actively engaged in business: Costa Rican Enterprises, Madison Corporation, Mathiasen Tanker Company, Mathiasen Steamship Corporation, and Penfield Corporation (Panama). During all of the years 1953 through 1958 petitioner received a salary from Mathiasen Tanker Industries, Inc., and in addition thereto received income from the following sources in the years and amounts indicated: Year
Source
Amount
1953
General brokerage fees
$ 1,470.63
1954
Eastern Tankship Corp. - bro-
kerage fees
2,782.84
1954
Western Hemisphere Corp. -
brokerage fees
5,000.00
1955
Penfield Corp. - commission
1,937.00
1955
Algonquin Corp. stock - gain on
sale
5,700.00
1956
Western Hemisphere Corp. -
salary
1,150.00
1956
Petrol Corp. - settlement of
claim and interest in corpora-
tion
68,000.00
1957
Western Hemisphere Corp. -
salary
6,900.00
1958
Western Hemisphere Corp. -
salary
6,900.00
1958
Penfield Corp. - gain on liquida-
tion
4,000.00
1958
Mathiasen - Raudenbush Ocean
Transportation Co. - gain on
liquidation
29,000.00
*27 In 1951 petitioner met Lloyd R. Freeman, Jr., who represented to petitioner that he had contacts with persons of financial means from whom he could secure financing for shipping enterprises. At the time petitioner first met with Freeman, or subsequently, he disclosed to Freeman his interest in arranging for sources of financing an acquisition of title to, or interest in tankers. Freeman arranged for petitioner to be introduced to Thorvald Homestead, who at that time was engaged in an import-export business in New York. Thereafter, petitioner and Homestead joined in negotiations which led to the acquisition of title to two tankers by Western Hemisphere Corporation, one-third of the stock of which was owned by petitioner, one-third by Homestead, and one-third by another individual, and the acquisition of one tanker by Eastern Tankship Corporation, the stock of which was owned 45 percent by petitioner, 45 percent by Homestead, and 10 percent by another person. The two tankers owned by Western Hemisphere Corporation and the one tanker owned by Eastern Tankship Corporation were chartered to Tidewater Associated Oil Company. Western Hemisphere Corporation had originally been incorporated *28 about 1950 by petitioner for the purpose of operating a group of Government-owned vessels in the Far East, but the corporation was not successful in consummating the transaction for which it was organized and engaged in no business activity until it engaged in the activity with respect to the acquisition of the two tankers which it chartered to Tidewater Associated Oil Company. Eastern Tankship Corporation was created specifically for the purpose of building and chartering a tanker to Tidewater Associated Oil Company. Western Hemisphere Corporation and Eastern Tankship Corporation each paid brokerage fees to Blair Rollins Corporation and to Cargo Ships & Tankers for consummating the chartering of their tankers to Tidewater Associated Oil Company. Each of the vessels owned by Western Hemisphere was a 16,000 ton tanker, one known as Flying A-California, and the other, as Flying A-Washington. The total cost of the two vessels was approximately $12,250,000. The ships were financed through loans to Western Hemisphere Corporation from the First National Bank of the City of New York, the Guaranty Trust Company of New York, and the Chase National Bank of the City of New York. The loans *29 were secured by a first preferred ship's mortgage given by the corporation. The tanker owned by Eastern Tankship Corporation, known as Flying A-Delaware, cost $7,130,000. A first ship's mortgage was given by Eastern Tankship Corporation to the First National Bank of the City of New York, the Guaranty Trust Company of New York, and the Chase National Bank to secure a loan to Eastern Tankship Corporation procured to finance the building of the vessel. In 1955 Lloyd R. Freeman, Jr., and Edward B. Freeman filed suit against Western Hemisphere Corporation, Mathiasen Tanker Industries, Inc., and petitioner in the Court of Common Pleas No. 6 of Philadelphia County, Pennsylvania, by a writ of summons. No complaint was filed in this case but plaintiffs' interrogatories to the defendants and defendants' answer thereto were filed of record in the case. In 1956 Lloyd R. Freeman, Jr., and Edward B. Freeman commenced a second suit in the Court of Common Pleas No. 6 of Philadelphia County, Pennsylvania, against Eastern Tankship Corporation, Western Hemisphere Corporation, and petitioner, wherein the plaintiffs claimed the amount of $59,997.42 from the defendants, Western Hemisphere Corporation *30 and petitioner, and the sum of $36,741.29 from Eastern Tankship Corporation and petitioner, as "finder's fees." The complaint alleged that these amounts were due as compensation for services in soliciting persons to arrange for financing of proposed tanker ventures in which petitioner was interested. The complaint alleged that petitioner orally agreed, on his own behalf and on behalf of Western Hemisphere Corporation and Eastern Tankship Corporation, that either he or one of the corporations would reasonably compensate Freeman if he arranged for petitioner's introduction or otherwise made it possible for him to contact a person or persons through whose efforts and activities the financing of a tanker venture would ultimately be obtained. In the answer filed to the complaint, verified by petitioner in his individual capacity and as president of Western Hemisphere Corporation and Eastern Tankship Corporation, the allegation that petitioner agreed that Freeman should receive reasonable compensation for making the necessary arrangements to procure sources of financing in connection with the acquisition of one or more tankers or an interest therein, was denied, but it was admitted that *31 such was customary. It was denied that any such representation was ever made by petitioner on behalf of either Western Hemisphere Corporation or Eastern Tankship Corporation. The answer specifically denied that petitioner either represented that he was, or in fact was, authorized by either Western Hemisphere Corporation or Eastern Tankship Corporation to make any promises to Freeman with respect to compensation for any services rendered. The answer further denied that petitioner was at any time acting on behalf of either Western Hemisphere Corporation or Eastern Tankship Corporation when having any dealings whatsoever with Freeman. A joint stipulation of admitted facts for pretrial hearing was filed in the suit by the Freemans against petitioner, Western Hemisphere Corporation, and Eastern Tankship Corporation, in which it was stated, among other things, that petitioner met Thorvald Homestead through Freeman and that there were negotiations relating to the financing of the tankers to be owned by companies partially owned by petitioner, Homestead, and associates, in which Homestead took part. This stipulation also stated that as a result of discovery proceedings, counsel for the Freemans *32 had advised counsel for petitioner that an amendment to complaint would be filed setting forth claims similar to those set forth in the complaint as filed but against petitioner only, based on the acquisition of a tanker by Lennox Corporation and the acquisition of a tanker by Penfield Corporation, and that counsel for defendants had agreed to make no objection to such a timely amendment. The claim of the Freemans against the defendants was settled by the payment of $12,500 on November 15, 1957. The entire sum of $12,500 in settlement of the suit was paid by petitioner. Petitioner unsuccessfully attempted to secure reimbursement for a portion of the payment from the other parties to the settlement, except that about a year after the suit was settled on December 31, 1958, Thorvald Homestead gave petitioner a promissory note for $1,000 which at the date of the trial of this case had not been paid. Petitioner, at the time of the settlement of the suit, was contemplating other tanker transactions with Homestead and people he had met through Homestead. Upon agreeing to the settlement, petitioner instructed his attorney to obtain a full release so that petitioner would not be troubled *33 with the same thing again. Other than this instruction, petitioner did not discuss with his attorney the names of the parties to be included in the release. At the time of the settlement the attorney for the Freemans agreed that petitioner's attorney could name the parties to be released. The release was prepared by petitioner's attorney who included in the release any person with whom petitioner individually or with Homestead or others had participated in transactions involving tankers or maritime ventures including both individuals and corporations. Petitioner's attorney included the names of any person in any way connected with maritime ventures with petitioner in the release as a precautionary measure. The release given by the Freemans provides in part as follows: WHEREAS, Mathiasen and Homestead met through an introduction arranged by Lloyd R. Freeman, Jr. and Edward B. Freeman (also known as Edward B. Freeman, III), which introduction was arranged for the purpose of allowing both of these individuals to further their business interests as aforesaid; and WHEREAS, Mathiasen and Homestead thereafter engaged in certain maritime ventures, including the ownership and chartering *34 of various vessels, either as individuals or through the instrumentality of corporations in which they were shareholders, directors and/or officers; and WHEREAS, certain economic benefits, direct and indirect, have accrued to Mathiasen and Homestead as a result of their joint activities in promoting certain maritime ventures; and WHEREAS, Lloyd R. Freeman, Jr. and Edward B. Freeman have made claim against Mathiasen and certain corporations in which Mathiasen was a stockholder, officer and/or director; and * * *
WHEREAS, counsel for the plaintiffs in both of said actions have indicated an intention of amending the cause of action set forth in the latter of the two said suits to include certain transactions not recited therein; and * * *
WHEREAS, the defendants in the said actions have denied any agreement to pay compensation as alleged by the plaintiffs in the said latter action and deny any and all liability as set forth in the Complaint filed in the latter of the two said actions; and WHEREAS, certain information concerning the aforementioned litigation has become known in shipping circles; and WHEREAS, Mathiasen takes great pride in his reputation for honorable *35 dealings in a field where such negotiation is purely verbal; and WHEREAS, the dispute between the plaintiffs in the said actions and Mathiasen has harmed the reputation of Mathiasen; and WHEREAS, the parties to said litigation have agreed to compromise and settle their differences, without any admission of liability on the part of the defendants, for the sum of Twelve thousand five hundred dollars ($12,500.00) to be paid by Mathiasen to Lloyd R. Freeman, Jr. and Edward B. Freeman: NOW, THEREFORE, know all men by these presents that Lloyd R. Freeman, Jr. and Edward B. Freeman, in consideration of the payment of Twelve thousand, five hundred dollars ($12,500.00) and of other good and valuable consideration, the receipt of which is hereby acknowledged, and intending to be legally bound hereby, have remised, released and forever discharged and by these presents do remise, release and forever discharge: 1.
M. A. Mathiasen
2.
Thorvald Homestead
3.
Mathiasen's Tanker Industries, Inc.
4.
Western Hemisphere Corporation
5.
Eastern Tankship Corporation
6.
Gilbert Verney
7.
R. A. Hummel
8.
George Esselborn
9.
Penfield Corporation (Panama)
10.
Penfield Corporation (Liberia)
11.
Lennox Corporation
12.
Madison Corporation
13.
Scandinavian Tankers, Inc.
14.
Mathiasen-Raudenbush Ocean Trans-
portation Co.
15.
Puerto Rico Liberian Corporation
16.
Tidewater Oil Company (former
name Tide Water Associated Oil
Company)
*36 their heirs, executors, administrators, successors, and assigns of and from all manner of actions, causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law, equity, or admiralty, or under any statutes, for all claims, losses or damages which against any of the parties herein released either or both of the above named releasors now have, ever had or may have, and particularly, but not in limitation of any of the general terms of this release, for all claims arising out of, resulting from, or relating to, or which might hereafter arise as a result of the aforementioned arrangement for the introduction of Mathiasen to Homestead and for any and all services at any time heretofore performed by Lloyd R. Freeman, Jr. and/or Edward B. Freeman with respect to arranging or attempting to arrange for either an equity contribution or a loan in furtherance of any desire on the part of Mathiasen to acquire ownership or partial ownership in any vessel or corporation having or interested in acquiring ownership or partial ownership of any vessel. It is further agreed that counsel for Lloyd R. Freeman, Jr. and Edward B. *37 Freeman, shall deliver appropriate orders so that the two said suits pending in the Court of Common Pleas No. 6 for Philadelphia County may be marked settled of record. IN WITNESS WHEREOF we have hereunto set our hands and seals this 29th day of November, 1957. It was anticipated that a jury trial would be held in the case. Prior to the time of trial a pretrial conference was held with the trial judge at which the judge expressed the opinion that petitioner might be well out of $20,000. Petitioner's counsel advised him that in his opinion he should not be liable but in view of the jury trial there would be an exposure to liability. For this reason petitioner's counsel recommended to petitioner that he settle the case. Petitioner made settlement of this case because he believed the outcome of a trial before a jury was highly questionable in view of the large sums of money involved in the transactions and a trial might result in an adverse judgment against him in an amount substantially greater than the amount of the settlement and also because he believed that the publicity of a trial would injure his reputation in the shipping industry. The claims were based upon his refusal to *38 make good on an alleged oral promise to pay a commission. It is customary in the shipping business to make oral commitments in transactions involving thousands of dollars and a man's good reputation for honesty and integrity in keeping his oral promise is very important. Petitioner, on his income tax return for 1957 under other deductions, claimed a deduction in the amount of $12,500 and in explanation thereof stated, "Settlement of law suit in order to preserve taxpayer income." Respondent, in his notice of deficiency, disallowed this claimed deduction with the explanation that it was not an allowable deduction. Opinion Section 162(a) of the Internal Revenue Code of 1954 provides for the deduction of ordinary and necessary business expenses paid or incurred by a taxpayer in carrying on a trade or business and section 212 of the Internal Revenue Code of 1954 provides in the case of an individual for the deduction of similar expenses paid or incurred in the production or collection of income or in the management, conservation or maintenance of property held for the production of income. The two sections provide for coextensive deductions *39 except that one applies to business expenses and the other to nonbusiness expenses incurred in the production of income or the management, conservation or maintenance of property held for production of income. Trust of Bingham v. Commissioner, 325 U.S. 365 (1945). The payment here in issue was in settlement of claims made in lawsuits against petitioner and certain corporations of which he was a stockholder and an officer. When payments are made in settlement of a lawsuit the test of their deductibility, either as an ordinary and necessary business expense or nonbusiness expense, is the character of the transaction which gave rise to the payment. American Envelope Co., 29 T.C. 307, 312 (1957) and cases there cited. Cf. James C. Coughlin, 3 T.C. 420 (1944). The basis of the claim involved in the suit against petitioner and the corporation was for services in putting petitioner in contact with persons through whose efforts the financing of tanker ventures would be obtained. Petitioner vigorously denied that he had any agreement to compensate Freeman for any services or that Freeman rendered any services. Petitioner does admit that it was *40 through Freeman that he met Homestead and that he and Homestead, together with others, formed several corporations which acquired tankers. Petitioner also admits that he was interested in acquiring an interest in tankers or in corporations which owned tankers. While the exact nature of the services, if any, rendered by Freeman to petitioner or to the corporation other than arranging for petitioner's introduction to Homestead is not clear, it is clear that what petitioner had discussed with Freeman was his interest in arranging for sources of financing an interest in tankers. Ultimately, petitioner and Homestead did acquire stock in corporations which obtained title to tankers. The alleged services were, therefore, for assistance in acquiring title to property. Payments for acquisition of title to property are capital expenditures and are not deductible either as ordinary and necessary expenses of a trade or business or ordinary and necessary expenses in the production or collection of income or the management, conservation or maintenance of incomeproducing property. Helvering v. Winmill, 305 U.S. 79 (193); United States v. Memorial Corporation, 244 F. 2d 641 *41 (C.A. 6, 1957); Ward v. Commissioner, 224 F. 2d 547, 554 (C.A. 9, 1955), affirming 20 T.C. 332; Marion A. Burt Beck, 15 T.C. 642, 669-670 (1950), affirmed per curiam 194 F. 2d 537 (C.A. 2, 1952). Petitioner contends that he was in the business of promoting and conducting maritime ventures and that the payment made in settlement of the suit was an ordinary and necessary expense of this business. Petitioner reasons that Freeman's claim was for services rendered and that payments for services are specifically deductible as a business expense. If we assume as petitioner contends that he was in the business of promoting and conducting maritime ventures, the evidence fails to show that Freeman's claim was for any services rendered such business. Freeman's claim was for services in petitioner's acquisition of an interest in tankers. The business of a promoter is distinguishable from that of an investor, even though the same individual be a promoter in some instances and an investor in others. Petitioner's conducting of maritime ventures was as an officer of corporations. There is nothing in the record to indicate that services in acquisition *42 of an interest in tankers would be related to petitioner's business of conducting maritime ventures as a corporate officer. The evidence in this respect shows at most that petitioner's acquisition of an interest in tankers would be of benefit to him as an investment and for producing income for one or more of the corporations in which he was a stockholder and officer. The business of a corporation is separate and distinct from that of its stockholders and officers. Low v. Nunan, 154 F. 2d 261 (C.A. 2, 1946), affirming a Memorandum Opinion of this Court. Petitioner argues, relying on Paul Draper, 26 T.C. 201 (1956), that the payment here involved is deductible as an ordinary and necessary business expense since one of the reasons he made the settlement was to protect his reputation which was essential to his continued successful operation in the maritime field. The facts here present are distinguishable from those involved in Paul Draper, supra.There the taxpayer brought a libel suit solely for the protection of his income derived from his business as an entertainer and not for the general protection of his business reputation. A payment made *43 to acquire or protect reputation is in the nature of a capital expenditure and not deductible as an ordinary and necessary business expense. Welch v. Helvering, 290 U.S. 111 (1933). Cf. Joseph Lewis, 27 T.C. 158, 163 (1956), affd. 253 F. 2d 821 (C.A. 2, 1957). Petitioner argues in support of his alternative contention that the deduction should be allowed as an ordinary and necessary expense for the production or collection of income or the management, conservation or maintenance of income-producing property, that a result of Freeman's introduction of petitioner to Homestead was the production of income to petitioner in the form of salaries and fees. Petitioner here overlooks the fact that it was petitioner's services to the corporations which he and Homestead and others formed which produced the salaries and fees. The result of Freeman's introduction of petitioner to Homestead was the acquisition by petitioner of a stock interest in the corporations. Carl W. Braznell, 16 T.C. 503 (1951), relied upon by petitioner, involved a situation where the payment was pursuant to a judgment for a commission for arranging a sale of property *44 which the taxpayer there involved did not make. That case did not involve the acquisition of property. Cf. Estate of James M. Shannonhouse, 21 T.C. 422 (1953). We sustain respondent in his disallowance of the claimed deduction. Decision will be entered for respondent.