SIDNEY AXELROD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent SIDNEY AXELROD and ANDREA AXELROD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Axelrod v. Commissioner
Docket Nos. 2883-72, 2884-72.
United States Tax Court
T.C. Memo 1973-190; 1973 Tax Ct. Memo LEXIS 96; 32 T.C.M. (CCH) 885; T.C.M. (RIA) 73190; August 28, 1973, Filed Sidney Axelrod and Andrea Axelrod, *97 pro se. John P. Graham, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: These cases place in controversy income tax deficiencies determined by respondent and overpayments claimed by petitioners as follows: Docket No.
Year
Deficiency
Claimed Overpayment 2883-72
1968
$2,260.60
$1,885.06
2884-72
1969
758.19
3,989.14 2 The issue for decision involves the relationship of the net operating loss carryback provisions of section 172(b) [1] to the alternative capital gains tax prescribed by section 1201(b). More specifically, the question is to what extent was a net operating loss incurred in 1967 and carried back to 1964 absorbed by capital gains realized in 1964 where those gains were the subject of the alternative tax provisions of section 1201(b). Petitioners were legal residents of Columbus, Ohio, at the time they filed their petitions. They filed a joint Federal income tax return for 1969. Sidney Axelrod (hereinafter petitioner) filed an individual return for 1968. Both returns were *98 filed with the Internal Revenue Service Center, Cincinnati, Ohio. The essential facts, all stipulated, may be briefly summarized. For 1964, petitioner reported taxable income of $1,042,032.03 of which $1,037,032.83 represented 50 per-cent of the excess of his net long-term capital gain over his net short-term capital loss. This means that petitioner in that year had ordinary income of $4,999.20 and net long-term capital gain of $2,074,065.66. On this reported income, 3 petitioner computed and paid the alternative tax prescribed by section 1201(b). For 1965 and 1966, petitioner had no taxable income, and in 1967, he suffered a net operating loss which was subject to carryback and carryover in the amount of $114,627.75. The 1967 loss was carried back to 1964, and the question is how much of the loss was absorbed by taxable income in that year. The answer controls the determination of the amount of the loss, if any, that may be carried over to 1968 and 1969, the years here in controversy. Section 1201(b), [2] applied in computing petitioner's tax liability for 1964, imposes an alternative tax in lieu 4 of the regular tax levied by sections 1 and 511, provided such *99 alternative tax is less than the tax which would otherwise apply. This alternative tax consists of two elements: (1) a tax computed at the regular rates on ordinary income, or, more precisely, on the taxable income reduced by 50 percent of the excess of the net long-term capital gains over the net short-term capital losses, and (2) 25 percent of such excess. *100 In computing the section 1201(b) alternative tax, a calculation is made of the regular tax without regard to the section in order to ascertain whether the alternative tax is less than the regular tax imposed by sections 1 and 511. In making this tentative calculation of the regular tax, all of the normally applicable deductions, including net operating losses, are taken into account. In computing the alternative tax as such, those normally applicable deductions apply in computing the first element of the tax, 5 i.e., the tax on the ordinary income, but they do not apply in any way in computing the second element, i.e., the 25 percent of the excess of the net long-term capital gains over the net short-term capital losses. See Walter M. Weil, 23 T.C. 424 (1954), affd. 229 F.2d 593 (C.A. 6, 1956). Petitioner contends that, in applying the 1967 net operating loss carryback, his taxable income for 1964 absorbed this net operating loss only to the extent of $4,999.20, the amount of the ordinary income taxed as the first element of the section 1201(b) alternative tax imposed for 1964. Since he had no taxable income for 1965 and 1966, he contends that *101 he is entitled to carry forward to 1968 and 1969 the remainder of the unused 1967 net operating loss in the amount of $109,628.55 (the loss of $114,627.75 less the ordinary income of $4,999.20 absorbed in 1964). Otherwise, he will be allowed no deduction for that portion of the net operating loss. Respondent urges that the entire amount of the 1967 net operating loss of $114,627.75 was absorbed in the carryback to 1964 even though petitioner's tax for 1964 was reduced as a result of the carryback only by the amount of the tax attributable to the ordinary income of $4,999.20. The language of section 172(b) (2), emphasized in the following 6 quotation, is crucial to respondent's argument: [With exceptions not material in this case], the entire amount of the net operating loss for any taxable year * * * shall be carried to the earliest of the taxable years to which * * * such loss may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. * * * [Underscoring supplied.] *102 Respondent interprets this language to mean that the carryover of a net operating loss is limited to the excess of the amount of such loss over the taxable income of the prior year. On this ground we are asked to hold that, since capital gains fall within the broad definition of taxable income, petitioner's taxable income for 1964 exceeded the net operating loss for 1967, and, therefore, nothing was subject to carryover to later years. In making this argument, respondent recognizes that this Court quite recently held in Chartier Real Estate Co., 52 T.C. 346, 356-358 (1969), affirmed per curiam 428 F.2d 474 (C.A. 1, 1970), that the part of a net operating loss carryback not absorbed in the section 1201(b) alternative tax computation may be carried forward to a later year under section 172(b) (2). However, respondent urges that the Court "confused taxable income with tax liability resulting in an 7 erroneous decision which should be reconsidered." We adhere to the Chartier Real Estate Co. decision since that opinion is consistent with the statutory language as well as the overall tax scheme. The decision serves the basic Congressional policy of *103 granting special favorable tax treatment to capital gains under section 1201(b) without requiring the forfeiture of deductions for net operating losses merely because such losses happen to have occurred within the statutory carryback or carryover period. The opinion preserves intact the Congressional intent to permit the offsetting of the business losses of lean years against the profits of lush years in those situations, described in section 1201(b), where capital gains - unrelated to prior or subsequent net operating losses - are the major factor in the computation of tax liability. An the Court, notwithstanding respondent's argument to the contrary, did not confuse taxable income with tax liability, as demonstrated by the following discussion of section 172(b) (2) set forth in the opinion (52 T.C. at 357-358): We agree with petitioner's contention that the phrase [in section 172(b) (2)] "to which such loss may be carried" modifies "taxable income" as well as "each of the prior taxable years." We further hold that "taxable income" in this context (as modified by the above phrase) means that taxable income to which the loss is actually 8 applied in computing *104 actual tax liability. In this case, since the tax for petitioner's year ending June 30, 1962, was computed by the "alternative" method, the only taxable income to which the loss could be carried was the * * * ordinary income for that year. * * * Affirming that holding, the Court of Appeals said (428 F.2d at 475): * * * we do not fault the Tax Court's conclusion that in section 172(b) (2), ""taxable income" means that taxable income to which the loss is actually applied in computing actual tax liability." * * * Consistent with this analysis, the court in Olympic Foundry Co. v. United States, an unreported case ( W.D.Wash. 1972, 29 A.F.T.R. 2d 72-759, 72-1U.S.T.C. par. 9299), on appeal (C.A. 9, May 25, 1972), said: If Section 172(b) (2) were to be interpreted as suggested by * * * [respondent], the modifying phrase "to which such loss may be carried" would be meaningless and superfluous. Decisions will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue. ↩
2. SEC. 1201. ALTERNATIVE TAX. (b) Other Taxpayers. If for any taxable year the net long-term capital gain of any taxpayer (other than a corporation) exceeds the net short-term capital loss, then, in lieu of the tax imposed by sections 1 and 511, there is hereby imposed a tax (if such tax is less than the tax imposed by such sections) which shall consist of the sum of - (1) a partial tax computed on the taxable income reduced by an amount equal to 50 percent of such excess, at the rate and in the manner as if this subsection had not been enacted, and (2) an amount equal to 25 percent of the excess of the net long-term capital gain over the net short-term capital loss. The provisions of sec. 1201(b) were amended by sec. 511(b) of Pub. L. 91-172, 83 Stat. 635, effective after December 31, 1969, in respects not pertinent to the present controversy. ↩